[Crim. No. 1746.  Third Appellate District.—December 6, 1940.]

In the Matter of the Application of LEOLA M. KELLOGG for a Writ of Habeas Corpus.

Busick & Busick for Petitioner.

Otis D. Babcock, District Attorney, and Elvin F. Sheehy, Deputy District Attorney, for Respondent.

THOMPSON, J.—By means of *habeas corpus* the petitioner seeks to secure her release from custody after having been held by a magistrate in a preliminary examination to answer to a charge of grand theft as provided by section 487 of the Penal Code.

The petitioner, who is the wife of William V. Kellogg, was charged with grand theft accomplished by means of drawing and cashing six checks upon the alleged joint tenancy account of herself and her husband in the Bank of America in Sacramento and by appropriating the money to her own use contrary to her trust. After a preliminary examination of the charge before a magistrate she was held to answer before the superior court for the crime of grand theft. An information was thereafter filed charging her with grand theft.

The proceedings at the preliminary examination show that William V. Kellogg owned the sum of $7,462.58, derived from the sale of his property, which was deposited in the Bank of America. He became seriously ill and went to the Veterans' Hospital at Yountville for treatment. Before leaving for the hospital both Mr. and Mrs. Kellogg signed a printed bank signature card of joint tenancy in the bank account in the following language:

"The undersigned depositors agree as follows with Bank of America National Trust & Savings Association:

"(1) That this account is to be carried by said bank as a savings account and all funds which the undersigned depositors have or may have on deposit therein with said bank shall be governed by its By-Laws, all future amendments thereof, and all regulations passed or hereafter to be passed by its Board of Directors pursuant to said By-Laws relating thereto including interest, service charges, etc.

"(2) That all funds now to the credit of or which may hereafter be placed to the credit of this account are and shall be the property of the undersigned as JOINT TENANTS to be withdrawn as follows:

"Upon the signatures of either of us or our survivors.

"(3) That in the event of the death of either of us the survivors will notify the bank at once.

"(4) You are also hereby authorized to accept the endorsement of either of us for the other of us on checks payable to both of us or to the other of us for deposit to this account.

(Signed) Mr. William V. Kellogg<br>Mrs. Leola M. Kellogg.

. . . . . . . . . . . . . .

"Date Jan 2 '40."

█ ˙ Subsequently the petitioner drew her checks upon the account for an aggregate sum amounting to several hundred dollars and appropriated the money to her own use. Mr. Kellogg recovered and upon returning from the hospital he demanded a refunding of the money which was refused. At the preliminary hearing, Mr. Kellogg was permitted to testify to an oral conversation between the spouses, over the objection of the defendant, that:

"The amount was not to be drawn on until I died. . . . I placed it in a joint tenancy with her, with the understanding that it should be drawn on when I passed away. . . . My conversation was that Leola says to me that she wished—this money would never be touched until I passed away, and that she would use it for litigation, in case I died, possibly in handling the estate."

The petitioner contends that the testimony of Mr. Kellogg against his wife in the criminal proceeding is incompetent and in violation of section 1881, subdivision 1, of the Code of Civil Procedure, and of section 1322 of the Penal Code, and that there is no evidence of the alleged theft of money, since the creation of the joint tenancy in the bank account passed the title to her absolutely and that the unambiguous language of the written instrument may not be varied or changed by parol evidence.

The petitioner asserts her husband was precluded by section 1881, subdivision 1, of the Code of Civil Procedure and by section 1322 of the Penal Code, from testifying against her in the criminal proceeding. We think not. The circum-

stances of this case bring it directly within the exception to the general rule that neither a husband nor a wife is a competent witness against the other one in a criminal action. Section 1322 of the Penal Code was amended in 1911 to add the exception with relation to the property of the spouse. It now reads:

"Neither husband nor wife is a competent witness for or against the other in a criminal action or proceeding to which one or both are parties, except with the consent of both, *or in case of criminal action or proceedings for a crime committed by one against the person or property of the other,* whether before or after marriage or in cases of criminal violence upon one by the other, or upon the child or children of one by the other or in cases of criminal actions or proceedings for bigamy, or adultery, or in cases of criminal actions or proceedings brought under the provisions of Sections 270 and 270a of this code or under any provisions of the 'Juvenile Court Law'."

In its exception to the general rule, subdivision 1, of section 1881 of the Code of Civil Procedure does not exclude the evidence of one spouse in a criminal proceeding against the other when the charge affects the *property* of the witness. It merely provides that "this exception does not apply . . . to a criminal action or proceeding for a crime committed by *one against the other"*. Evidently the amendment to section 1322 of the Penal Code was adopted in 1911 to expressly authorize a spouse to testify against the other one in a criminal action involving a crime against either the person *or the property* of the witness. The provisions of the two codes are not conflicting in that regard, except upon the doctrine that having expressed certain exceptions to the general rule in section 1881 of the Code of Civil Procedure it is implied that other exceptions are therefore excluded. But that doctrine does not apply when the legislature deliberately adopts a section of another code specifically including another exception, as it did in section 1322 of the Penal Code. Both sections may be read together without doing violence to either. The last-mentioned section relates exclusively to criminal cases and, if there is any inconsistency between the two sections, the provision of the Penal Code should prevail in that class of cases. Section 1102 of the Penal Code provides that:

"The rules of evidence in civil actions are applicable also in criminal cases, *except as otherwise provided in this code.*"

The legislature has thus declared that the provisions of the Penal Code shall prevail over the Code of Civil Procedure, where the first-mentioned code specifically enacts a contrary rule of evidence on a particular subject. (*People* v. *Langtree,* 64 Cal. 256, 259 [30 Pac. 813].)

The testimony of Mr. Kellogg was not incompetent merely because he is the husband of the defendant in the criminal proceeding. The accusation upon which the defendant was being tried involved the charge that she had stolen his property.

The cases relied upon by the petitioner in support of her contention that the testimony of her husband was incompetent may be reasonably reconciled with what we have previously said regarding that subject. *McIntosh* v. *Hunt,* 29 Cal. App. 779 [157 Pac. 839, 842], and *Ayres* v. *Wright,* 103 Cal. App. 610 [284 Pac. 1077], were both civil suits. Neither of them involved a crime against the person or property of a spouse. The case of *People* v. *Godines,* 17 Cal. App. (2d) 721 [62 Pac. (2d) 787], assumed that the defendant did not commit a crime against either the "person or the property of the other" spouse. It was a criminal proceeding against the wife on a charge of perjury alleged to have been committed by filing a verified complaint in a former suit against her husband for annulment of the marriage, falsely averring that he was a Filipino with whom she could not legally contract marriage and that the marriage had been procured by fraud. The marriage occurred in Mexico where the Oriental disqualification for marriage does not exist, and the marriage was therefore not void on that account. But it was also contended the marriage was procured by means of fraud and that it should be dissolved on that account. It appears that before the criminal case was tried the marriage had been annulled, for the court says: "At the time of the trial, however, the Filipino was no longer the husband of the defendant." Since the alleged perjury for which the defendant was being tried was not a "communication made by one (spouse) to the other", upon the authority of *People* v. *Loper,* 159 Cal. 6 [112 Pac. 720, Ann. Cas. 1912B, 1193], the court held that section 1322 of the Penal Code was not applicable.

However, it was held that a letter from the defendant to her husband, which was sent before the marriage was dissolved, and which was admitted in evidence over the objection of the defendant, constituted reversible error. We assume that the last-mentioned ruling was based on the assumption that the alleged perjury of the wife, in the suit for dissolution of marriage, did not constitute "a crime committed by one against the *person* or property of the other" and for that reason that it did not come within the amended section 1322 of the Penal Code. Clearly the Godines annulment proceeding was not a suit against the *property* of her husband, for it does not appear that any property was involved in that suit. If perjury committed against a husband in a suit for dissolution of marriage *is not in effect a crime against his person,* then the court properly held in the Godines case that the letter from the defendant to her husband did not come within the exception to either section 1322 of the Penal Code or section 1881, subdivision 1, of the Code of Civil Procedure, and its admission in evidence constituted reversible error. Reputable authorities hold that such conduct of a spouse does constitute a crime against the *person* of the other spouse. It certainly affected his marital status and therefore injured him personally. That is a question which we are not required to determine in this proceeding. If it be assumed that the perjury of Mrs. Godines was a crime against the person of her husband, then that case is in direct conflict with the provisions of both section 1322 of the Penal Code as amended in 1911, and section 1881 of the Code of Civil Procedure, and we would then withhold our approval of it.

The case of *State* v. *Kephart,* 56 Wash. 561 [106 Pac. 165, 26 L. R. A. (N. S.) 1123], upon which the petitioner relies, is based upon facts similar to those of the present case, but it applied to a statute of the State of Washington which is radically different from the California statute as it now exists. The husband was charged with burning the property of his wife. That Washington statute merely provided that neither a husband nor a wife could testify against the other without consent, except in a criminal proceeding involving "a crime *committed by one against the other".* That statute did not contain the important exception found in section 1322 of our Penal Code with relation to crimes com-

mitted against the *property* of the other spouse. If it had contained that provision we have no doubt the testimony of the wife would have been held to be competent, and the judgment would not then have been reversed.

There is no doubt that a different rule prevails in that regard in the trial of civil cases. (*Marple* v. *Jackson,* 184 Cal. 411 [193 Pac. 940].)

A more serious question is presented as to whether evidence of an oral agreement is admissible to show that an unambiguous written document between a husband and wife creating a joint tenancy in a bank account pursuant to section 15a of the Bank Act is not what it purports to be, but on the contrary that it merely passed conditional title to the money involved to the wife in the event only that she survives her husband.

In California it has been held that a joint tenancy in a bank account may create a trust, dependent upon the intention of the parties, which may be established by extrinsic evidence rebutting the mere presumption of an absolute transfer of title by means of a written instrument like a deed. (*Waters* v. *Nevis,* 31 Cal. App. 511 [160 Pac. 1081]; *Williams* v. *Savings Bank,* 33 Cal. App. 655 [166 Pac. 366]; *Halsted* v. *Central Savings Bank,* 36 Cal. App. 500 [172 Pac. 613]; *Halsted* v. *Oakland Bank of Savings,* 36 Cal. App. 816 [172 Pac. 614]; *Conneally* v. *San Francisco Sav. & Loan Soc.,* 70 Cal. App. 180 [232 Pac. 755].) It is true that, in the absence of fraud, lack of consideration or other infirmity which vitiates the entire document, extrinsic evidence is not admissible to vary the terms of a written deed or other instrument. (3 Jones Com. on Evidence, p. 2757, sec. 1511.)

Where a deed or a written contract is procured by an agreement *dehors* the instrument, which creates a trust independent of the document, parol evidence is admissible on the theory that a violation of the agreement amounts to constructive fraud, which may be established by extrinsic evidence as explanatory of the transaction out of which an equitable trust arises, and it does not necessarily contradict the terms of the deed. (*Brison* v. *Brison,* 75 Cal. 525, 533 [17 Pac. 689, 7 Am. St. Rep. 189].) In the case last cited, the plaintiff executed a deed to his wife, absolute in form, with the oral understanding that it was made to save the expense of probating his estate in case of his death, and that

she would reconvey the property to him at his request. Upon demand she refused to reconvey the property. In effect, the court held that she procured the property by means of constructive fraud and that she held the title in trust for him. Evidence of the oral agreement to reconvey the property and of the circumstances of the transaction were recited in the complaint. A demurrer to the complaint was upheld. On appeal, the order sustaining the demurrer was reversed, and the court was directed to overrule the demurrer. The court quoted with approval from the case of *Hall* v. *Livingston*, 3 Del. Ch. 348, 373, and said with respect to the competency of such oral evidence:

" 'There is a well-recognized distinction between contradicting a deed or impairing its legal operation, and raising out of the transaction an equity *dehors* the deed, binding the grantee's conscience to hold the land for the real purposes of the conveyance, and not according to its legal operation, when the latter use of it would, under the circumstances, work fraud. Such an equity is held to be independent of the deed, and not excluded by it as a mere conveyance of the legal estate, unless there be in it some terms or implication to that effect. To support such an equity, parol evidence is admissible, not as contradicting the deed, but as explanatory of the transactions out of which the equity arises.'

"Perhaps the most comprehensive and philosophical expression of the rule is, that parol evidence is admissible to raise a trust in cases of actual or constructive fraud. But whatever may be thought of the terms in which it is expressed, the rule itself is well settled."

◼ Trusts in money and in other forms of personal property may be created by parol agreement. In *Lefrooth* v. *Prentice*, 202 Cal. 215, 227 [259 Pac. 947], it is said:

"It is a cardinal rule that trusts in personalty may be created, declared, or admitted verbally and may be proved by parol evidence, but the authorities are uniform to the effect that such evidence must at all times be clear and unequivocal."

To the same effect is the text in 65 Corpus Juris, page 254, section 37, which is supported by a multitude of authorities including several from the jurisdiction of California.

◼ We desire to make it clear that a written agreement creating a joint tenancy in a bank account may not be varied

or defeated by evidence of an accompanying oral agreement establishing a trust in conflict with the unambiguous language of the contract except upon a clear showing of fraud, undue influence, lack of consideration or circumstances indicating that the instrument was not intended to become effective.

In response to the preceding language quoted from the Brison case to the effect that evidence of an oral agreement accompanying the execution of a deed may be competent to show the creation of a trust and that it is not excluded *"unless there be in it some terms or implication to that effect"* it may be suggested that in the present case the printed card which created the joint tenancy account does provide that the funds may be withdrawn *"upon the signature of either of us or our survivors"*. That language would seem to refute the evidence of the oral agreement testified to by Mr. Kellogg that his wife was not to draw upon the account until after his death.

There are several California cases which hold that parol evidence is incompetent to vary the terms of a written agreement creating a joint tenancy in a bank account. But all of those cases involve efforts to vary the terms of the written agreement by oral evidence in suits which were instituted after the death of one of the joint owners of the fund. None of those cases arose during the lives of either of the parties to the contract. Apparently there is a distinction between cases arising during the lives of the contracting parties, and suits by or in behalf of third parties after the death of one of the contracting parties.

Many California cases have held that evidence of an oral agreement is incompetent to vary or change the unambiguous terms of a written instrument creating a joint tenancy between a husband and wife in a bank account. That principle is concisely stated in the case of *Conneally* v. *San Francisco Savings & Loan Society,* 70 Cal. App. 180 [232 Pac. 755], as follows:

"When a written instrument is executed by a husband and wife on opening an account with a bank agreeing that the deposit when made and all accumulations thereof should be held by them as joint tenants with the right of survivorship, each is seized of the whole estate from the creation of the tenancy and the whole vests in the survivor without regard to the prior ownership or title to the property. . . .

*"In the absence of fraud or mistake,* parol evidence is inadmissible to change the terms of the legal effect of such a written instrument where it is in no respect uncertain or ambiguous."

The preceding statement of the rule excluding parol evidence under such circumstances is reinforced by the language of section 15a of the Bank Act (Stats. 1921, p. 1367, 1 Deering's Gen. Laws of 1937, p. 222, Act 652), which provided in part:

"The making of the deposit in such form shall, in the absence of fraud or undue influence, *be conclusive evidence,* in any action or proceeding to which either such bank or the surviving depositor or depositors may be a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors."

In support of the declaration of that rule excluding evidence of an oral agreement varying the terms of the written instrument, the Conneally case cites half a dozen authorities, to which may be added many more, including *Hill* v. *Bradeljy,* 107 Cal. App. 598 [290 Pac. 637], and *Henry* v. *Bank of America,* 8 Cal. App. (2d) 353 [47 Pac. (2d) 1068]. It is true that in each of those cases the suit involved a joint tenancy bank account maintained by or against a survivor of one of the parties to such a joint tenancy, or by or against the bank involved therein. In none of those cases was the action instituted during the lifetime of both parties to the transaction. It is claimed by the respondent in this proceeding that a different rule prevails while both parties to the transaction are alive. In support of that contention the language of the Bank Act previously quoted is referred to as indicating that the intention of the parties to create the joint tenancy is *"conclusively presumed"* only in cases wherein the bank or a surviving depositor is a party. It is argued that since the act so provides, the presumption that the parties intended to create a joint tenancy is otherwise rebuttable, and that therefore oral evidence is admissible in suits while the surviving depositors are alive.

The companion cases of *Wallace* v. *Riley,* reported in 23 Cal. App. (2d) at page 654 [74 Pac. (2d) 807] and 23 Cal. App. (2d) 669 [74 Pac. (2d) 800], in both of which cases hearings were denied by the Supreme Court, determine the contention of the petitioner in this case adversely to her.

Those actions were suits between co-depositors in alleged joint tenancy bank accounts created by written instruments under section 15a of the Bank Act under circumstances almost identical with those of the present proceeding. The Wallace cases distinguish between suits by or against a surviving depositor after one of the parties to such a transaction has died, and actions which are instituted during the lifetime of the co-depositors. It is definitely held that, under circumstances similar to those of the present proceeding, evidence of an oral agreement contrary to the presumption of the written instrument may be shown while both parties are alive, to establish the intent of the parties to create a trust, on the theory that it is evidence that the written instrument was procured by means of constructive fraud. After stating that, pursuant to the language of section 15a of the Bank Act, the written agreement to create a joint tenancy in a bank account, after the death of one of the depositors, *is conclusive evidence* of that relationship, that presumption, with respect to the co-depositors, is rebuttable during their lifetime. The court says at page 663 in that regard:

"While such conclusiveness prevails in aid of the survivor, that same rule does not obtain in a controversy involving the rights of the depositors during their joint lives. Though their interests and shares are presumed to be equal, nevertheless *if there is proof of some special agreement between them at variance with the legal presumption of equality, their rights and interests will then be fixed in accordance with their own agreement.*

"In recognition of this exception as between the joint tenants themselves, the court in *Hill* v. *Bradeljy,* 107 Cal. App. 598, 604 [290 Pac. 637], said: 'During the lifetime of both of the depositors either one would have the right to establish the real fact, whatever it might be, with reference to the account, and would have the right to bring an action in respect thereto.' This passage is quoted with approval, and the principle so announced was applied in *Spear* v. *Farwell,* 5 Cal. App. (2d) 111, 113, 114 [42 Pac. (2d) 391.]"

After stating that the Hill case did contain language to the effect that parol evidence is not admissible to vary the terms of a written agreement for a joint tenancy in a suit between the depositors in their lifetime, the Wallace opinion refutes that statement in the following language:

"No controversy between living depositors being before the court in that case, the expression was *obiter dictum*, and is not deemed pertinent in the case in hand. Furthermore in *Spear* v. *Farwell, supra,* where a joint tenancy account had been opened by Mr. and Mrs. Farwell with funds belonging to the wife, parol evidence was held to have been properly admitted to show Mrs. Farwell's superior claim upon the fund as against a levy by the plaintiff as a judgment creditor of Mr. Farwell."

The court concludes its opinion in the Wallace case by saying:

"During the lifetime of both of the designated depositors, however, the door is open to proof that the tenancy created was in truth something different from the character of the tenancy defined by the legal presumption. The relative rights of the parties are then dependent on the realities of the ownership."

It follows that evidence of the oral agreement between the spouses that the wife was not authorized to draw upon or use the funds for her own benefit until after the death of Mr. Kellogg, was competent on the theory that it tended to show that the written agreement of joint tenancy was procured by constructive fraud. It constituted an exception to the general rule that a written instrument may not be varied by extrinsic evidence.

The writ of *habeas corpus* is denied.

Pullen, P. J., concurred.

A petition by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 3, 1941, on the ground of want of jurisdiction to entertain the petition.