[S. F. No. 18092. In Bank. May 27, 1952.]

JESSIE H. PATERSON, Appellant, v. ALCIDE
COMASTRI et al., Respondents.

Stanley Burke for Appellant.

Alcide Comastri, in pro. per., Thomas P. Kelleher, Frank J. Fontes, Davis & Barber and Robert K. Barber for Respondents.

James B. Abbey, and James S. Lowrie, as Amici Curiae on behalf of Respondents.

SPENCE, J.—Plaintiff brought three separate actions, which were consolidated for trial, to determine the conflicting claims of plaintiff and defendant Comastri to three joint bank accounts. One account is in each of the defendant banks, and it was stipulated that the banks are mere stakeholders. From findings and judgments adverse to her, plaintiff appeals.

Plaintiff and Mary Blair Gilmour were sisters. Following the death of Mary's husband in 1934, Mary opened a savings account in the names of herself and plaintiff with each of the defendant banks. In July, 1945, Mary married defendant Comastri, and in August of that year she caused the three accounts to be transferred from the names of plaintiff and herself to the names of herself and her husband in joint tenancy. Plaintiff did not learn of these transfers until after Mary's death in 1947.

It is plaintiff's claim that she is entitled to one-half of the monies transferred from each of the original joint accounts to the new accounts. She argues that Mary was entitled to withdraw only one-half of these monies, and that by her appropriation of the entire balances to open the new accounts, she effected a severance of the unity of title. As a result thereof, plaintiff maintains that she became entitled as a tenant in common to one-half of the whole of each deposit existing at the time.

Defendant Comastri, on the other hand, takes the position that his wife had the right to withdraw the funds from the original accounts without liability to plaintiff because she was in fact and in law the real owner of the money. He therefore, as the survivor of the joint tenancies established by his wife through the transfers in August, 1945, claims to be entitled to the entire balances in all three accounts.

It is undisputed that all three original accounts were opened with Mary's money; that the withdrawals from time to time were all made by her; that the passbooks were held by her throughout, and that the transfers to the new accounts were negotiated by her without the plaintiff's knowledge or consent. Nor does plaintiff dispute that all subsequent deposits were made by Mary except one for $2,000, which plaintiff claims to have made. The trial court, however, found otherwise as a reasonable inference from the evidence. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; *Raggio* v. *Mallory*, 10 Cal.2d 723, 725 [76 P.2d 660].)

When the account with the Hibernia Bank was opened in December, 1934, plaintiff and Mary signed a printed form providing that the funds therein would be "payable to either or to the survivor of them." A more extended writing was signed by them when the account with the Bank of America. was opened in the same month. It provided in part that: "The undersigned depositors agree as follows with Bank of America . . . (2) that all funds now to the credit of or which may hereafter be placed to the credit of this account are and shall be the property of the undersigned as joint tenants to be withdrawn as follows: Upon the signature of either of us or the survivor . . ." They signed a substantially similar writing when the account with the American Trust Company was opened in January, 1939, and again in 1943, when, after loss of the passbook for the Bank of America account, a new book was issued to them.

Plaintiff testified at length in reference to the circumstances surrounding the opening of the accounts, the related conversations between her sister and herself during the ensuing years, and the exercise of control by her sister over the funds by keeping sole possession of the passbooks and making the deposits and withdrawals. She stated that in two of the three instances Mary had asked her to accompany her to the bank for the purpose of opening a "joint account"; that she had done so and had signed whatever was presented to her by the bank teller. On the other occasion the bank's printed card was mailed to her for her signature. She testified that her "sister would occasionally tell me this account has earned so much interest or I have added to this," and that when the Bank of America and American Trust accounts were opened, her sister in each instance had said "it was a joint account, and it was to come to me automatically at her death."

Plaintiff further testified that while she had never made any withdrawals from any of the three joint accounts, she knew that if she "needed money or help in any way my sister would certainly have allowed me to have a certain sum from her bank as I would from my own if she needed money." With respect to the single deposit of $2,000 which she claimed to have made in one of the accounts, plaintiff appeared to be very uncertain about the exact nature of the transaction. While identifying such sum to have been realized as her share in the sale of some family property,

plaintiff admitted that she had "no definite recollection" of what was done with the money.

The court made findings favorable to defendant Comastri in every respect. It found that Mary "never intended" and plaintiff "never understood or believed that the addition of plaintiff's name in the statutory pattern endowed plaintiff with a vested property interest" in the three accounts opened in their names; that they were not joint tenancy accounts, and that Mary and plaintiff agreed that they "would have a different character," namely, "that of sole and absolute ownership" in Mary with plaintiff "succeeding upon the death of Mary . . . to whatever, if anything, was left." The court further found that plaintiff at no time made any deposits in, contributions to, or withdrawals from these accounts, and that Mary "at all times withheld from plaintiff all dominion over the account[s] and exercised full control and power of disposition as sole owner thereof, retaining the passbook[s] in her possession." The court determined therefrom that the "presumption arising from the form of the account[s]" in the names of Mary and plaintiff had been "overcome by evidence." With respect to the accounts established in the names of Mary and defendant Comastri, the court concluded that the joint tenancies "in the statutory pattern" were "conclusive evidence of the intention of the depositor to vest title to the deposit[s] and all additions thereto in the survivor, Alcide Comastri."

The position of plaintiff on this appeal is twofold. She argues (1) that although in the usual case of withdrawals by one depositor from a joint account during the lives of the depositors the presumption of joint tenancy is rebuttable (California Bank Act, § 15a▮), it may not be rebutted by parol evidence in the case where the joint tenancy account was created by an unequivocal writing; but (2) if parol evidence is admissible, there has been an insufficient showing in this case to overcome the rebuttable presumption.

Section 15a of the California Bank Act (1 Deering's Gen. Laws 1937, Act 652, pp. 221-222) provides that a deposit made by any person in the names of such depositor and others "in form to be paid to any of them or the survivor or survivors of them" shall become the "property of such persons as joint tenants," and that "[t]he making of the

deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in every action or proceeding to which . . . the surviving depositor or depositors may be a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors.''

■ This section, which was copied from the New York Bank Act, has been construed by the courts of this state and of New York to set up two presumptions: First, that a deposit in the names of the depositor and another person ''in form to be paid to'' either or the survivor of them, becomes the property of such persons as joint tenants. ■ This first presumption is not conclusive, and may be overcome by proof that the owner-depositor, when making the deposit, had no intention to create a true joint tenancy. ■ The second presumption, that in the absence of fraud or undue influence, it was the intention of the depositors to vest title in the survivor, is conclusive. ■ In order that the conclusive presumption may be applicable, however, there must be survivorship, and even then it applies only in favor of the survivor to monies still remaining in the account at the time of death. It does not apply in respect to monies withdrawn by either of the depositors during life, even if one of the depositors has subsequently died. (*Wallace* v. *Riley,* 23 Cal.App.2d 654, 661 [74 P.2d 800] ; *Moskowitz* v. *Marrow,* 251 N.Y. 380, 396 [167 N.E. 506, 512, 66 A.L.R. 870] ; *Matter of Porianda,* 256 N.Y. 423, 425-426 [176 N.E. 826] ; *Matter of Juedel,* 280 N.Y. 37, 40 [19 N.E.2d 671] ; *Walsh* v. *Keenan,* 293 N.Y. 573, 578 [59 N.E.2d 409].)

■ The question presented by plaintiff's claim is that of the right of one of the codepositors to withdraw funds from the account during the lives of the codepositors. Under these circumstances the statutory presumption of equality of interest arising from the form of the joint account is rebuttable by competent evidence showing the true character and ownership of the monies deposited. (*Wallace* v. *Riley, supra,* 23 Cal.App.2d 654, 664; *In re Kellogg,* 41 Cal.App.2d 833, 841-845 [107 P.2d 964] ; *Spear* v. *Farwell,* 5 Cal.App.2d 111, 113 [42 P.2d 391] ; *Moskowitz* v. *Marrow, supra,* 251 N.Y. 380, 396.) This is conceded by plaintiff, but she argues that parol evidence is incompetent to vary the terms of the specific joint tenancy agreements executed by the parties. This argument has particular reference to the Bank of America and American Trust accounts, where the agreements spe-

cifically stated that all funds deposited therein "shall be the property of the undersigned as joint tenants."

Plaintiff bases her position mainly on *Estate of Gaines*, 15 Cal.2d 255 [100 P.2d 1055], and certain cases which preceded. (*Kennedy* v. *McMurray*, 169 Cal. 287 [146 P. 647, Ann.Cas. 1916D 515]; *Estate of Harris*, 169 Cal. 725 [147 P. 967]; *Estate of Gurnsey*, 177 Cal. 211 [170 P. 402]; *Crowley* v. *Savings Union Bank & Trust Co.*, 30 Cal.App. 144 [157 P. 516]; *Conneally* v. *San Francisco Sav. & Loan Soc.*, 70 Cal. App. 180 [232 P. 755]; *Estate of Fritz*, 130 Cal.App. 725 [20 P.2d 361].) However, none of these cases gave extended consideration to the effect of section 15a of the Bank Act, and each involved a controversy over the right of the surviving codepositor to the balance remaining in a joint account existing at the time of the death of the deceased codepositor, rather than a controversy over the right of a codepositor to make withdrawals during the lifetime of all the codepositors. These cases are therefore clearly distinguishable, for if section 15a of the Bank Act had been applied, the conclusive presumption rather than the rebuttable presumption would have come into play and would have produced the same result.

Section 15a was in existence at the time of the transactions in the Gaines case, but this court found it unnecessary to rest the decision upon that section, as it found no substantial evidence, competent or incompetent, sufficient to sustain the theory that the surviving depositor held title to the balance in the existing joint account subject to a trust. For the purpose of the present discussion, which concerns only the right of a codepositor to make withdrawals during the lifetime of the codepositors, it is significant to note that this court gave apparent approval to *Wallace* v. *Riley, supra,* 23 Cal.App.2d 654, in the Gaines case. (See 15 Cal.2d 255, at p. 260.)

Since its enactment, section 15a of the Bank Act has been deemed a part of each contract creating a joint bank account. (*Wallace* v. *Riley, supra,* 23 Cal.App.2d 654, 666.) The presumptions created by that section are therefore applicable regardless of the unequivocal nature of the deposit agreement; and to the extent that parol evidence of intention becomes admissible in certain types of controversies to overcome the rebuttable presumption and to show the "realities of ownership" (*Wallace* v. *Riley, supra,* at p. 664), the section effects a statutory modification of the parol evi-

dence rule with respect to bank accounts established in the statutory pattern. To hold otherwise "would do violence to intention, for those who open such accounts have seldom any thought of restricting their enjoyment of the fund, their right to draw and spend, by the shackles of a formula . . . It would foster litigation, for each of the two depositors, the one opening the deposit as fully as the other, would be subject to an accounting for moneys afterwards withdrawn, and forced to make division on the footing of equality." (Cardozo, Ch. J. in *Moskowitz* v. *Marrow,* 251 N.Y. 380, at p. 397 [167 N.E. 506, 66 A.L.R. 870]. See, also, *Spear* v. *Farwell, supra,* 5 Cal.App.2d 111; *In re Kellogg, supra,* 41 Cal.App.2d 833.)

The record here contains substantial evidence as to Mary's intent at the time of the creation of the joint accounts with plaintiff. This evidence was competent to show that contrary to the rebuttable presumption, Mary did not intend to create true joint tenancy accounts with plaintiff, and had regarded the accounts as her own property. The trial court so found, and that question was for the trial court to resolve. (*Wheeland* v. *Rodgers,* 20 Cal.2d 218, 222 [124 P.2d 816]; *Spear* v. *Farwell, supra,* 5 Cal.App.2d 111, 113; *Copprell* v. *Copprell,* 87 Cal.App.2d 4, 6 [195 P.2d 868].) The conclusion of the trial court, that the "tenancy created at the opening" of the joint accounts between Mary and plaintiff was "in truth something different from the tenancy defined by the presumption," was therefore proper. (*Walsh* v. *Keenan, supra,* 293 N.Y. 573, 580; see, also, *Wallace* v. *Riley, supra,* 23 Cal.App.2d 654, 663.)

Since the presumption in favor of plaintiff's claimed interest in the transferred funds has been overcome, it follows that the trial court properly concluded that defendant Comastri was the owner of the funds as the survivor of the joint tenancies between Mary and himself. In the absence of a showing of fraud or undue influence, it is conclusively presumed that title became vested in defendant Comastri as such survivor. (*Jorgensen* v. *Dahlstrom,* 53 Cal. App.2d 322, 332 [127 P.2d 551]; *Hill* v. *Badeljy,* 107 Cal. App. 598, 604 [290 P. 637]; *Conneally* v. *San Francisco Sav. & Loan Soc., supra,* 70 Cal.App. 180, 183.)

Our attention has been directed to only two cases which are contrary to the views expressed herein. (*Henry* v. *Bank of America,* 8 Cal.App.2d 353 [47 P.2d 1068]; *Tobola* v. *Wholey,* 75 Cal.App.2d 351 [170 P.2d 952].) The Henry

case was decided prior to the decision in *Wallace* v. *Riley, supra,* 23 Cal.App.2d 654, and without adequate consideration of the history, purpose and effect of section 15a of the Bank Act. No distinction was there made between the conclusive presumption and the rebuttable presumption created by that section, and the conclusive presumption was applied despite the fact that the real question involved was that of the right of one of the codepositors to make withdrawals during the lifetime of all the codepositors. The Tobola case was decided later, and while the decision of the court was correct under the facts there, the court erroneously held that parol evidence was inadmissible to vary the express terms of the written contracts of deposit during the lifetimes of the depositors. This holding was based on such cases as *Hill* v. *Badeljy, supra,* 107 Cal.App. 598, *Estate of Gurnsey, supra,* 177 Cal. 211, *Kennedy* v. *McMurray, supra,* 169 Cal. 287, *Conneally* v. *San Francisco Sav. & Loan Soc., supra,* 70 Cal.App. 180, all of which involved the survivorship situation. The court failed to distinguish between the conclusive and rebuttable presumptions created by section 15a of the Bank Act, and did not consider the views expressed in the Wallace case or those found in *In re Kellogg, supra,* 41 Cal.App.2d 833. The decision of the Henry case, and the above-mentioned holding of the Tobola case, are therefore disapproved.

The judgments are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Schauer, J., concurred.

Appellant's petition for a rehearing was denied June 19, 1952.