[Civ. No. 27663. Fourth Dist., Div. Two. June 1, 1983.]

Estate of BEN ZEISEL, Deceased.
KATHY JO ZEISEL, Petitioner and Respondent, v.
DOROTHY R. ZEISEL, as Executrix, etc., Objector and Appellant.

**COUNSEL**

George F. Kossler for Objector and Appellant.

Bock & Stoddard and Leonard A. Bock for Petitioner and Respondent.

**OPINION**

**KAUFMAN, J.**—Dorothy R. Zeisel, the surviving widow of and executrix of the estate of Ben Zeisel, appeals from an order of the probate court directing the transfer from the estate to Kathy Jo Zeisel, the decedent's daughter, of one-half the amount in two savings and loan accounts standing in the name of the decedent at the time of his death.

*Facts[1]*

[1]The facts are derived largely from the statement of facts contained in the appellant's opening brief. In the respondent's brief there is a complaint that the statement of facts in the appellant's opening brief includes reference to evidence "introduced at the first trial" which it is asserted "is irrelevant and immaterial to the re-trial, except to the extent that the same testimony or documents were offered into evidence at the re-trial." Whether there was a new trial or simply a reconsideration is debatable, but in any event, no attempt is made in the respondent's brief to state the facts as the daughter claims them to be.

From March 9, 1976, through May 4, 1977, the decedent and his wife Minerva opened a number of accounts at Great Western Savings and Loan Association. Accounts identified as 924-6, 921-4, and 206-6 were opened in the names of the decedent and Minerva as joint tenants with initial deposits of $6,000, $3,000 and $125,000, respectively. An account identified as 602-7 was opened with an initial deposit of $5,000 in the names of the decedent, Minerva and their daughter Kathy Jo Zeisel, all as joint tenants. On May 11, 1977, one week after they had opened the $125,000 account (206-6) the decedent and Minerva added the daughter's name to that account as a joint tenant. The daughter signed the account card of each account on which she was named as a joint tenant.[2]

On June 13, 1977, Minerva died. In the course of probating Minerva's estate, the decedent filed an inheritance tax declaration, form IT 22, an attachment to which stated in relevant part as to the two Great Western accounts on which the daughter's name appeared as joint tenant: "The name of Kathleen Jo Zeisel appears as a joint tenant on items six and seven of attachment A attached hereto. Her name was placed on said items as a joint tenant for convenience only and no transfer of a present or future interest was intended by decedent [Minerva] or the surviving spouse [Ben Zeisel]." The attachment also declared that all properties held by Ben and Minerva "in joint tenancy form were community property."

After obtaining from the county treasurer a consent to transfer as to account 206-6, the $125,000 account, decedent closed accounts 921-4 and 924-6 and deposited the proceeds into account 206-6. On the same day decedent removed the daughter's name from accounts 206-6 and 602-7 and thereafter the accounts stood in the name "Ben Zeisel, as an individual."

In the succeeding two years approximately, decedent made several withdrawals from account 206-6 leaving the balance on August 14, 1979, at $114,685.43. On that date he withdrew $50,000 from the account and gave it to the daughter.

---

[2]The account card in each case provided in pertinent part: "If this is a Joint Tenancy account it is agreed by the signatory parties with each other that any funds placed in said account by any one of the parties shall be owned by such parties as joint tenants with right of survivorship. [¶] Regardless of the type or form of this account, Association is authorized, unless indicated hereon or by separate written instructions to the contrary, to act without further inquiry in accordance with any writing bearing the signature of any one or more of the undersigned as they appear below. Without limitation of the generality of the foregoing, the Association is authorized and may (1) pay, deliver or transfer all or any part of such account or any rights relating thereto, at any time(s), to any one or more of the undersigned, and any such payment, delivery or transfer, or a receipt of acquittance signed by any one or more of the undersigned shall be a valid release and discharge of the Association . . . ."

On October 2, of either 1978 or 1979, decedent married Dorothy R. Zeisel. On October 2, 1979, he executed his last will and testament, paragraph three of which provides: "I give, devise and bequeath all of my property and estate of every kind and description and wherever situated to my wife, DOROTHY RITCHIE ZEISEL. I have intentionally omitted to provide for my daughter KATHY JO ZEISEL because I have already provided for her."

On September 24, 1980, decedent died, and his widow Dorothy R. Zeisel was duly appointed executrix of his estate. In due course, pursuant to Probate Code section 851.5, the daughter filed a notice and first amended petition for an order directing the transfer of funds, claiming she was entitled to one-half "of the sum of $130,000.00 plus interest as surviving joint tenant with her deceased father, Ben Zeisel, of the two (2) joint tenancy bank accounts at Great Western Savings and Loan Association [accounts 206-6 and 602-7]." It was alleged "[t]hat upon the death of Minerva Zeisel, in July, 1977, Ben Zeisel, without [the daughter's] knowledge or consent, and without color or right, unlawfully removed [the daughter's] name from said two (2) bank accounts, appropriating the entire account [*sic*] for himself."

Following an evidentiary hearing and the filing of briefs, on June 5, 1981, a minute order issued denying the daughter's petition for transfer. It recited that the court found that her parents had agreed in establishing the joint tenancy bank accounts that the daughter was to receive the proceeds of the accounts upon the death of *both* parents; that after the death of Minerva Zeisel, Ben Zeisel continued to have control over the joint accounts and "withdrew all of said funds, thus terminating the joint accounts during his life"; and that withdrawal of the funds prevented any gift of funds from vesting in the daughter.[3]

The daughter timely filed a notice of intention to move for new trial pursuant to Code of Civil Procedure section 659 on grounds of error in law at trial, the judgment being contrary to law, and insufficiency of the evidence. The new trial motion was set for hearing on July 7, 1981, and was heard on that date. Thereafter the court issued a minute order that stated the motion for new trial was construed to be a motion to reconsider and, as such, was granted.

The daughter then filed a second amended petition for order directing transfer of funds virtually identical to the first except that it added paragraphs indicating that the matter had been heard and decided earlier but that a motion for new trial, construed by the court as a motion to reconsider, was granted and that the original trial judge preferred "the reconsidered motion to be heard by another judge."

---

[3]Apparently the court treated the decedent's removing the daughter's name from the accounts as tantamount to his withdrawing all of the funds and redepositing them in an account or accounts in his own name.

The second amended petition came on for hearing before another judge on October 30, 1981. The exhibits introduced at the first hearing were reintroduced and two witnesses testified, including the daughter, who had also testified at the first hearing. The substance of the daughter's testimony was that in putting her name on the accounts her parents had indicated they wanted her to have the money in the event something happened to both of them.[4]

The testimony of the daughter and the form 22 submitted by the decedent in connection with the administration of Minerva's estate were received subject to a motion to strike on the ground that Financial Code section 7604 established a conclusive presumption of joint tenancy that precluded the reception of extrinsic evidence going to the intent of the parties. On December 1, 1981, the court issued a minute order entitled "RULING RE SECOND AMENDED PETITION FOR ORDER DIRECTING TRANSFER OF FUNDS," granting the motion to strike and granting the daughter's petition for transfer of funds.

The minute order of December 1, 1981, which is treated by the parties as the judgment, reads in part: "The Court is of the opinion that Financial Code 7604 and its conclusive presumption provisions is controlling in this case. However, even if the section doesn't mean what it says and the Court were to consider the excluded testimony and the Form IT-22, the Court's ruling would be the same. A joint tenancy interest in the two bank accounts vested in Petitioner upon signing the cards on Nov. 19, 1976 and on May 11, 1977. The Court is of the opinion that the death of Minerva on July 13, 1977 terminated the joint tenancy relationship and the accounts were thereafter tenancy in common accounts between Ben and Kathy Jo in equal shares. It may be argued that the accounts remained as joint tenancy accounts between Ben and Kathy Jo, but in any event, her interest was vested and could not be divested by the unilateral act of Ben."[5]

---

[4]While the transcript of the daughter's original testimony was not introduced into evidence, she was asked if she remembered her earlier testimony and she replied affirmatively indicating she was now giving "[b]asically the same answer, that it was to be my money, if anything happened to my parents."

The daughter's reference to her earlier testimony and her statement that she was giving "[b]asically the same answer," brought her previous testimony before the court, and it has properly been made part of the record on appeal.

[5]The next and final paragraph of the order reads: "It is to be noted that attachment B to the Form 22 describes the financial history of Minerva and Ben and states that all joint tenancy assets were purchased with funds generated by the community jewelry business. Minerva quite naturally would want to see to it that her only child received at least her half of the funds acquired during the marriage, irrespective of what Ben wanted to do with his one-half. Ben's unilateral act in appropriating the account to himself after Minerva's death was not consistant [sic] with the notion that Minerva would want the natural object of her bounty to share in her estate after her death. The Court is of the opinion that a grave injustice would be done if the Court were not to grant this Petition."

*Contentions, Issues and Discussion*

The critical issues at trial were (1) whether the daughter acquired a present interest in the accounts at the time her name was put on them and (2) whether Financial Code section 7604 established that fact by conclusive presumption. The issues on appeal are whether in the circumstances shown the cited section establishes a conclusive presumption of the daughter's joint tenancy interest in the accounts or whether the court properly excluded extrinsic evidence of the parties' actual interest pursuant to the parol evidence rule. If both those questions are answered in the negative, reversal will be required, and the only question remaining will be whether the evidence establishes as a matter of law that no true joint tenancy interest in the daughter was intended or created so that judgment should be entered in favor of the executrix without the necessity of retrial.[6]

We conclude that section 7604 does not establish a conclusive presumption in the circumstances shown and that the parol evidence rule did not authorize the court's order striking the extrinsic evidence. We further conclude the evidence does establish as a matter of law that at the time the daughter's name was put on the accounts her parents did not intend to give her a present interest in the account but only that she should have whatever money was left in the accounts if they should both die.

The daughter contends the court correctly struck the extrinsic evidence and that consideration of extrinsic evidence going to the intent of the parties is precluded by the parol evidence rule or a statutorily prescribed conclusive presumption. (All statutory references will be to the Financial Code unless otherwise specified.)

Section 7602 provides: "When shares or investment certificates are issued in the name of two or more persons . . . as joint tenants or in form to be paid to any of them or the survivors of them, such shares or certificates and all dues paid thereon become the property of such persons as joint tenants." By analogy to former section 15a of the Banking Act, which contained similar language and which we shall discuss *infra,* section 7602 creates only a rebuttable presumption of joint tenancy ownership. (*Machado* v. *Machado* (1962) 58 Cal.2d 501, 506 [25 Cal.Rptr. 87, 375 P.2d 55].)

---

[6]The executrix also urges there was no basis for the court's granting the motion for reconsideration. However, what was moved for and what was granted was in fact a motion for new trial. Indeed what the parties had was a new trial, not reconsideration. An order granting a new trial, however, is an appealable order (Code Civ. Proc., § 904.1, subd. (d)), and the executrix having failed to timely appeal from that order, may not challenge it for the first time on this appeal.

Section 7604 provides: "The purchase or acceptance of shares or investment certificates in the name of two or more persons as joint tenants or in form to be paid to any of them or the survivors of them, in the absence of fraud or undue influence, is *conclusive evidence in any action or proceeding to which either the association or the surviving share or certificate holders may be a party,* of the intention of such share or certificate holders to vest title to such shares or certificates and dues paid on account thereof and dividends and interest thereon in the survivors." (Italics added.)

■ Clearly section 7604 establishes a conclusive presumption in those situations to which it applies. The daughter claims that she is a "surviving share or certificate holder" and that therefore section 7604 applies to this proceeding. However, she has misanalyzed the legal relationships and is mistaken.

The daughter was one of the two surviving named share or certificate holders following Minerva's death, but that did not end things. She and her father then remained as joint tenants of the accounts. (See 1 Ogden's Rev. Cal. Real Property Law (1974) § 7.13, pp. 277-278; 2 Tiffany, The Law of Real Property (3d ed. 1939) § 419, p. 198; see also § 7603.) The father, by removing the daughter's name from the accounts and naming himself as the owner individually, in effect withdrew all of the funds and redeposited them in accounts in his own name. On these facts the question presented is not survivorship rights but the right of the father to withdraw funds during his lifetime. (See *Paterson* v. *Comastri* (1952) 39 Cal.2d 66, 71 [244 P.2d 902]; *Wallace* v. *Riley* (1937) 23 Cal.App.2d 669, 677 [74 P.2d 800]; *Wallace* v. *Riley* (1937) 23 Cal.App.2d 654, 664 [74 P.2d 807].) When that is the issue, "the statutory presumption of equality of interest arising from the form of the joint account is rebuttable by competent evidence showing the true character and ownership of the monies deposited." (*Paterson* v. *Comastri, supra*; accord: *Wallace* v. *Riley, supra*; *Wallace* v. *Riley, supra*.)

As the court explained in *Paterson* v. *Comastri, supra,* 39 Cal.2d at page 71: "In order that the conclusive presumption [found in former section 15a of the California Bank Act] may be applicable, however, there must be survivorship, *and even then it applies only in favor of the survivor to monies still remaining in the account at the time of death. It does not apply in respect to monies withdrawn by either of the depositors during life, even if one of the depositors has subsequently died.*" (Italics added; accord: *Wallace* v. *Riley, supra,* 23 Cal.App.2d at p. 676; *Wallace* v. *Riley, supra,* 23 Cal.App.2d at pp. 661, 664.)

It is true as the daughter points out that *if a true joint tenancy was created in the first place,* money taken from the joint tenancy account and put into another account during the joint lives of the depositors will be traced into the new ac-

count and will retain its character as joint tenancy property. (*Estate of Harris* (1915) 169 Cal. 725, 728 [147 Cal.Rptr. 967]; *Doran* v. *Hibernia Savings & Loan Soc.* (1947) 80 Cal.App.2d 790, 795 [182 P.2d 630]; *Wallace* v. *Riley, supra,* 23 Cal.App.2d at p. 665.) However, whether or not a true joint tenancy was intended and created in the first instance is here the question to be answered. It begs the question to argue the daughter is the surviving joint tenant of the account standing in the name of Ben at the time of his death and that she is therefore conclusively presumed to have been a joint tenant of the accounts on which her name was placed in the first instance. She was not a joint tenant of the successor account unless she was a true joint tenant of the original account, and in determining whether the conclusive presumption is applicable we may not assume the answer to the ultimate question at issue.

Moreover, the facts of this case are legally indistinguishable from those in *Paterson* v. *Comastri, supra,* 39 Cal.2d 66, and *Wallace* v. *Riley, supra,* 23 Cal.App.2d 669, in each of which the court determined that similar language creating a conclusive presumption of joint tenancy found in former section 15a of the California Bank Act was not applicable and that the joint tenancy form of the accounts created only a rebuttable presumption of joint tenancy. (*Paterson* v. *Comastri, supra,* 39 Cal.2d at pp. 70-73; *Wallace* v. *Riley, supra,* 23 Cal.App.2d at pp. 675-679.)

In *Paterson* the deceased opened three joint tenancy bank accounts in her name and that of her sister. Later the deceased removed her sister's name from the accounts and substituted the name of her new husband. The sister argued that the conclusive presumption of joint tenancy found in former section 15a of the California Bank Act was applicable and that the deceased was entitled to withdraw only one-half the money in the accounts. The court held, however, as previously indicated, that the conclusive presumption was inapplicable and the presumption of joint tenancy created when the sister's name was placed on the accounts was rebuttable. (39 Cal.2d at pp. 71-72.)

Similarly, in the second *Wallace* v. *Riley* case (23 Cal.App.2d 669), Charlotte Riley and Minnie Wallace had established a joint tenancy bank account. Subsequently the account was closed and a new joint tenancy account was opened in the names of Charlotte Riley and Harvey Wallace, the son of Minnie, because of Minnie's illness. Harvey had agreed, however, to hold his interest in the account in trust for Minnie. Subsequently, Charlotte Riley, without the knowledge or consent of Minnie or Harvey, withdrew from the account "the entire amount of $7,198.69, and caused said sum to be transferred to a new account in the same bank, opened in the names of Charlotte M. Riley, Gladys G. Grabill and Curtis E. Riley, Sr." and on the same day some of the moneys were transferred to yet other accounts. (23 Cal.App.2d at pp. 672-673.) The precise issue in the case was whether the intervener Minnie Wallace

had stated a cause of action. In concluding that she had, the court determined that the presumption of joint tenancy arising from the opening of the initial account was rebuttable rather than conclusive. (23 Cal.App.2d at pp. 675-677, 679.)

It is true that the statute involved in the *Paterson* and *Wallace* v. *Riley* cases was not section 7604 but rather former section 15a of the California Bank Act, which was subsequently repealed in 1949 and used as the basis for Banking Code section 852, which in 1951 became Financial Code section 852. (See *Paterson* v. *Comastri, supra,* 39 Cal.2d at p. 70, Reporter's Note.) However, the language of section 7604, enacted in 1951 (Stats. 1951, ch. 364, § 7604, pp. 1022-1023) is substantially the same as that in former section 15a of the California Bank Act.[7] In view of the parallel language in the two sections, they should be given the same interpretation. (Cf. *Machado* v. *Machado, supra,* 58 Cal.2d at p. 506.) Indeed, the daughter asserts in her brief on appeal that the first *Wallace* v. *Riley* decision, which dealt with former section 15a of the Bank Act should be treated as dispositive.

We conclude that the conclusive presumption set forth in section 7604 is inapplicable because the question at issue is the right of Ben Zeisel to withdraw all of the moneys from the accounts during his lifetime. (*Paterson* v. *Comastri, supra,* 39 Cal.2d at p. 71; *Wallace* v. *Riley, supra,* 23 Cal.App.2d at pp. 676, 677; *Wallace* v. *Riley, supra,* 23 Cal.App.2d at pp. 661, 664.) The presumption of joint tenancy arising from the form of the original accounts was rebuttable. (*Machado* v. *Machado, supra,* 58 Cal.2d at p. 506.)

■ There is no merit in the contention that the parol evidence rule precluded the executrix from introducing extrinsic evidence bearing on the intent of the parties at the time the daughter's name was placed on the accounts. The court in *Paterson* v. *Comastri* dealt with that very problem in connection with former section 15a of the California Bank Act. It held: "The presumptions created by

---

[7]The language of section 7604 as previously indicated is: "The purchase or acceptance of shares or investment certificates in the name of two or more persons as joint tenants or in form to be paid to any of them or the survivors of them, *in the absence of fraud or undue influence, is conclusive evidence in any action or proceeding to which either the association or the surviving share or certificate holders may be a party, of the intention of such share or certificate holders to vest title to such shares or certificates and dues paid on account thereof and dividends and interest thereon in the survivors.*" (Italics added.)

Former section 15a of the California Bank Act as last amended in 1929 read in pertinent part: "When a deposit shall be made in any bank by any person or persons . . . in the names of such depositor or depositors and another person or persons, and in form to be paid to any of them or the survivor or survivors of them, such deposit and any additions thereto . . . shall become the property of such persons as joint tenants . . . . The making of the deposit in such form shall, *in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such bank or the surviving depositor or depositors may be a party, of the intention of such depositors to vest title to such deposit and the additions thereto in such survivor or survivors.*" (Stats. 1929, ch. 239, § 3, pp. 444-445; italics added.)

that section are therefore applicable regardless of the unequivocal nature of the deposit agreement; and to the extent that parol evidence of intention becomes admissible in certain types of controversies to overcome the rebuttable presumption and to show the 'realities of ownership' (*Wallace* v. *Riley, supra,* at p. 664), the section effects a statutory modification of the parol evidence rule with respect to bank accounts established in the statutory pattern. To hold otherwise 'would do violence to intention, for those who open such accounts have seldom any thought of restricting their enjoyment of the fund, their right to draw and spend, by the shackles of a formula . . . . It would foster litigation, for each of the two depositors, the one opening the deposit as fully as the other, would be subject to an accounting for moneys afterwards withdrawn, and forced to make division on the footing of equality.' (Cardozo, Ch. J. in *Moskowitz* v. *Marrow,* 251 N.Y. 380, at p. 397 [167 N.E. 506, 66 A.L.R. 870]. [Other citations omitted.].)" (39 Cal.2d at pp. 72-73; accord: *American Trust Co.* v. *Fitzmaurice* (1955) 131 Cal.App.2d 382, 387 [280 P.2d 545].)

Following the second hearing the trial court struck from evidence the daughter's testimony and the form 22 executed by Ben Zeisel in connection with Minerva's estate. In view of our conclusions the court's evidentiary ruling was manifestly in error. However, the court in its minute order indicated that even if it had considered the stricken evidence it would have reached the same result because a joint tenancy interest in the two accounts vested in the daughter when the account cards were signed by her and on the death of Minerva the accounts became "tenancy in common accounts between Ben and Kathy Jo in equal shares." (See text accompanying fn. 5, *ante.*)

The conclusion of the court that the accounts became tenancy in common accounts on the death of Minerva is, as previously indicated, incorrect. Assuming the daughter became a true joint tenant in the first instance, on the death of Minerva the accounts were, as previously indicated, owned by the daughter and the father as joint tenants. ■ In any event, however, our review of the record persuades us that the evidence establishes as a matter of law that at the time the daughter's name was placed on the accounts the parents did not intend for her to have any immediate interest in the accounts but only a right of survivorship, that is, she was to have the money in the accounts if they both should die.

Consistent with the fact that her name was not originally placed on the $125,000 account at all but only added afterwards, the daughter herself testified that her parents told her they were putting her name on the accounts so that she would have the money if anything happened to both of them. There is no evidence that when Minerva died the daughter made any claim either in Minerva's estate or extrajudicially that she was entitled to any part of the money in the accounts. In the form 22 filed with the state Treasurer in connec-

tion with Minerva's estate, Ben declared the daughter's name had been placed on the accounts as a matter of convenience only and thereafter removed the daughter's name from both accounts and placed them exclusively in his own name. Ben thereafter made numerous withdrawals from the accounts, including a withdrawal of $50,000 from account 206-6 which he gave to the daughter. Upon his remarriage Ben immediately executed a will in which he stated he intentionally omitted to provide for the daughter because he had already "provided for her." Finally, there is no evidence the daughter ever asserted any ownership interest in the original accounts or the successor accounts at any time during the father's lifetime.

Thus, all of the extrinsic evidence overwhelmingly suports the conclusion that the daughter was not intended to have any present interest in the accounts at the time her name was placed on them. The only evidence to the contrary is the account cards themselves. However, their effect was to create a rebuttable presumption of joint tenancy. A presumption is not evidence (Evid. Code, § 600; *Elliott* v. *City of Pacific Grove* (1975) 54 Cal.App.3d 53, 59-60 [126 Cal.Rptr. 371]) and in view of the fact that all of the evidence, including the testimony of the daughter, indicated the nonexistence of a true joint tenancy, the effect of the rebuttable presumption must be deemed to have been dispelled in this case. (Cf. *LeGrand* v. *Yellow Cab Co.* (1970) 8 Cal.App.3d 125, 132 [87 Cal.Rptr. 292].)

### Disposition

The judgment is reversed with directions to the trial court to enter judgment for the executrix.

Morris, P. J., and Rickles, J., concurred.