152 Cal.App.3d 509 (1984)
199 Cal. Rptr. 345
Estate of JANET C. DRUCKER, Deceased.
ANN C. HALL, Petitioner and Respondent,
v.
JANE DENHAM CORNISH, as Executrix, etc., Objector and Appellant.
Docket No. 28926.
Court of Appeals of California, Fourth District, Division One.
February 7, 1984.
*511 COUNSEL
Brown & Adler and John Adler for Objector and Appellant.
Crabtree & Goodwin, Brooks Crabtree and Daniel B. Crabtree for Petitioner and Respondent.
OPINION
WIENER, J.
Jane Denham Cornish, executrix of the estate of Janet C. Drucker, deceased, appeals the orders determining Ann C. Hall to be the owner as surviving joint tenant of (1) a bank account at La Jolla Bank & Trust Company (La Jolla account) and (2) the proceeds of a $25,000 treasury bill. Although the source of the La Jolla account and the treasury bill was a joint tenancy account between Drucker and Hall, those items were in Drucker's name alone at the time of her death. Because the joint tenancy was not a true joint tenancy we reverse with instructions to enter orders in favor of the executrix.
In August 1981, Hall petitioned under Probate Code section 851.5 for a declaration that she was the sole owner as surviving joint tenant of the La Jolla account opened by Janet Drucker, deceased. Finding Hall owned the account, the court granted her motion for judgment on the pleadings and *512 ordered Cornish to give the money in the account to Hall. This court reversed the judgment in an unpublished opinion (4 Civ. No. 26554) because Hall had not established a joint tenancy account by a writing as required by Civil Code section 683 and Financial Code section 852. The opinion said: "Nevertheless, this case should be remanded for trial because Hall contends the funds deposited by Drucker into the account were withdrawn from a separate account held in joint tenancy by Drucker and Hall. The significance of this contention was not pursued by the superior court due to the erroneous award of judgment on the pleadings based on the writings. If at trial Hall can prove the source of the funds was indeed a joint tenancy account owned by Drucker and herself, the new account opened by Drucker ordinarily would also be held in joint tenancy despite the lack of a sufficient writing.
"`Contrary to the common law rule, if money is taken from a joint tenancy account in a California bank during the joint lives of the depositors, property acquired with the money so withdrawn, or another account into which the money is traced, has the character of property held in joint tenancy, unless there has been a change in the character by some agreement between the parties.' (9 CALJUR (3d ed. 1974) Banks, etc., § 115, p. 326.)
"A joint tenancy account does not lose its status as such when one of the joint tenants withdraws the funds and reinvests them (Estate of Harris, 9 Cal.2d 649; Taylor v. Crocker-Citizens Nat. Bank, 258 Cal. App.2d 682; Cordasco v. Scalero, supra, 203 Cal. App.2d 95; Wallace v. Riley, 23 Cal. App.2d 654; Estate of McCoin, 9 Cal. App.2d 480). Therefore, although a finding of a joint tenancy cannot be supported by any of the writings in evidence here, given the proper evidentiary showing, a joint tenancy may be proved by tracing the source of the funds in the account. The award of judgment on the pleadings to either party would be improper." (Italics supplied.)
Before the superior court heard the matter, Hall filed another petition against the estate for proceeds of a $25,000 treasury bill in Drucker's name at the time of her death asserting it, like the La Jolla account, was traceable to a joint tenancy bank account at San Diego Trust and Savings Bank (San Diego account). The two petitions were consolidated for hearing. The court found that when Drucker established the La Jolla account by withdrawing funds from the San Diego account she did not intend to terminate the joint tenancy between herself and Hall. Accordingly, the court ruled Hall was entitled to both the La Jolla account and the treasury bill.
Our earlier decision precluded the court on retrial from finding the La Jolla account to be in joint tenancy form. We specifically held: "The superior court also erred when it found the documents presented (the signature *513 card and the checking-savings fund transfer authorizations) were sufficient to create a joint tenancy. Under Civil Code section 683 and Financial Code section 852, a joint tenancy bank account may only be created by a writing which contains specific language referring to a joint tenancy and/or a right of survivorship; `the intention to create a joint tenancy must appear expressly in the instrument allegedly giving rise to it. Without such a declaration, no joint tenancy results.' [Citation.] Even where two parties have created a common bank account to which both have equal access and where they have been informed by a bank officer a joint tenancy has been created, no joint tenancy will result absent a writing which specifically states the parties' intent to create a joint tenancy." (In re Estate of Drucker (Nov. 23, 1982) 4 Civ. 26554 [unpub. opn.], at pp. 4-5.) And "The absence of a writing sufficient to create a joint tenancy precludes the admission of parol evidence to prove a joint tenancy was intended by Drucker. [Citations.]" (Id., at p. 6.)
Thus, the only avenue available to Hall and the critical issue before the court on retrial was whether the San Diego account was a true joint tenancy between the decedent and Hall. The general statement contained in our opinion to the effect that property acquired with joint tenancy money is joint tenancy property unless the parties have agreed otherwise did not mean that Hall could satisfy her burden by merely tracing the source of the treasury bill and the La Jolla account to an account which she and Drucker held in joint tenancy form. Borrowing from Estate of Zeisel (1983) 143 Cal. App.3d 516 [192 Cal. Rptr. 25] "It begs the question to argue [that Hall] is the surviving joint tenant of the account standing in the name of [Drucker] at the time of [her] death and that she is therefore conclusively presumed to have been a joint tenant of the accounts on which her name was placed in the first instance. She was not a joint tenant of the successor account unless she was a true joint tenant of the original account, and in determining whether [any] presumption is applicable we may not assume the answer to the ultimate question at issue." (Id., at p. 524.)
(1) The nature of each party's interest in a joint tenancy bank account turns on the intent of the parties establishing the account. (Paterson v. Comastri (1952) 39 Cal.2d 66, 71-74 [244 P.2d 902]; Wallace v. Riley (1937) 23 Cal. App.2d 654, 665-666 [74 P.2d 807].) Where each party contributes funds into the joint tenancy account each has a present vested interest in those funds even though the contributions may be unequal. Even though one party may make no contributions whatsoever, the parties may nonetheless agree each has an interest in those funds allowing either party to use the funds under the terms of their agreement.
*514 (2) Frequently, however, individuals establish a joint tenancy account as part of an estate plan intending to make a gift to the surviving noncontributing joint tenant effective upon the contributing joint tenant's death. The California Supreme Court judicially recognized this purpose in Paterson v. Comastri, supra, 39 Cal.2d 66. (See also Estate of Zeisel, supra, 143 Cal. App.3d 516.) This type of arrangement is the legal equivalent of a revocable living trust in which the contributing joint tenant is the trustor and both joint tenants are trustees. As trustee the noncontributing joint tenant must comply with the trust terms. Where the contributing joint tenant intends to preclude the noncontributing joint tenant from a present lifetime interest the funds must be used solely for the trustor's benefit during the trustor's lifetime. It is only upon the trustor's death that the noncontributing joint tenant becomes entitled to the balance in the joint tenancy account.
(3) Viewed in this light, the trustor may invade part or all of the trust corpus or even revoke the trust to use the funds for purposes other than making a gift to the person named earlier as trust beneficiary. Under such circumstances, if the trustor were to die without redepositing the funds withdrawn from the trust, the beneficiary is not entitled to the property acquired by the trustor from trust funds. When the noncontributing joint tenant, as trustee, violates the trust and takes the funds for his own purposes the trustor can trace those funds into any property acquired by the errant trustee. Thus, the rule stated in our earlier opinion applies only in the latter situation. The facts in each of the cases reciting the general rule support our conclusion. (See Estate of Harris (1937) 9 Cal.2d 649 [72 P.2d 873]; Taylor v. Crocker-Citizens Nat. Bank (1968) 258 Cal. App.2d 682 [65 Cal. Rptr. 771]; Cordasco v. Scalero (1962) 203 Cal. App.2d 95 [21 Cal. Rptr. 339]; Wallace v. Riley, supra, 23 Cal. App.2d 654; Estate of McCoin (1935) 9 Cal. App.2d 480 [50 P.2d 114].)
(4) Here, the joint tenancy relationship between Hall and Drucker was well defined. Hall, the noncontributing tenant, had the duty to use the funds deposited by Drucker during Drucker's lifetime to defray Drucker's household expenses, medical bills and taxes. Hall's use of those funds for any other purpose had to await Drucker's death for only then did Hall, as the surviving joint tenant, have the right to those funds. When Drucker decided to transfer part of what in effect was trust corpus from the San Diego account into the La Jolla account and later purchase a treasury certificate in her name alone, Hall lost her right to those funds. (See Paterson v. Comastri, supra, 39 Cal.2d at p. 71.) Hall was named as a 25 percent beneficiary in Drucker's will. Lacking admissible evidence of Drucker's testamentary intent other than the intent she expressed in her will and lacking any evidence establishing the San Diego account as a true joint tenancy *515 account, Hall is not entitled to the property standing in Drucker's name alone at the time of Drucker's death.

Disposition
Orders reversed with instructions to enter orders in favor of the executrix.
Brown (Gerald), P.J., and Work, J., concurred.
A petition for a rehearing was denied February 29, 1984, and respondent's petition for a hearing by the Supreme Court was denied April 18, 1984.