MARGARET WALSH, Respondent, v. JAMES P. KEENAN, Appellant, et al., Defendants.

Argued November 15, 1944; decided December 30, 1944.

*P. Augustus Hopkins* for appellant. The lower court erred in its construction of the pertinent statute and in its interpretation of the effect of the presumption arising upon the " making " of a joint account. (Banking Law, § 239, subd. 3; *Matter of Buchanan,* 184 App. Div. 237; *Hayes* v. *Claessens,* 189 App. Div. 449; *Schultz* v. *Dry Dock Savings Institution,* 135 Misc. 343; *Matter of Curran,* 153 Misc. 630; *Matter of Carlin,* 134 Misc. 596; *Matter of Glen,* 157 Misc. 753, 272 N. Y. 530; *Matter of McKelway,* 221 N. Y. 15.)

*Albert Orenstein* for respondent. I. Upon the creation of the joint account, plaintiff became immediately vested with the moiety or one-half interest, which was irrevocable. (*Moskowitz* v. *Marrow,* 251 N. Y. 380; *Marrow* v. *Moskowitz,* 255 N. Y. 219; *Matter of Suter,* 258 N. Y. 104; *Matter of Juedel,* 280 N. Y. 37;

*Matter of Porianda,* 256 N. Y. 423; *Matter of Hoffman,* 175 Misc. 607; *In re Haggerty's Estate,* 38 N. Y. S. 2d 433; *Gardner* v. *Henderson,* 35 N. Y. S. 2d 439; *In re Lorch's Estate,* 33 N. Y. S. 2d 157; *Matter of McKelway,* 221 N. Y. 15.)   II. Decedent could not affect the rights of plaintiff by withdrawing the moneys in the joint account created on August 21, 1940, without plaintiff's consent.   (*Moskowitz* v. *Marrow,* 251 N. Y. 380; *Marrow* v. *Moskowitz,* 255 N. Y. 219; *Matter of Suter,* 258 N. Y. 104; *Gardner* v. *Henderson,* 35 N. Y. S. 2d 439; *In re Lorch's Estate,* 33 N. Y. S. 2d 157; *Matter of McCarthy,* 164 Misc. 719.)

RIPPEY, J.   Plaintiff seeks in this action to recover from defendants her alleged one-half interest in a bank account No. 419660 claimed by her to have been opened in the Onondaga County Savings Bank on August 21, 1940, by Kate D. O'Brien in her name and in that of her sister, the plaintiff, with a provision that " either or survivor may draw."   As will later appear no new account was opened by plaintiff or Miss O'Brien at that time or in that form at any time after March 22, 1929.

As ground for recovery, plaintiff alleged in her complaint that the defendant Keenan, without her consent or knowledge, but with knowledge of her rights and with the design, purpose and interest of defrauding and depriving her of her rights as joint owner of the account, fraudulently induced Miss O'Brien to close the joint account and to deposit the funds to the joint account of her sister and defendant who thereafter withdrew moneys therefrom without the knowledge of Miss O'Brien or of plaintiff for his own use so that the deposit in that account was reduced to $1,253 at the time of the death of Miss O'Brien which occurred on February 26, 1942.   The trial court correctly found that the gravamen of the cause of action was fraud or fraudulent inducement in that the defendant wrongfully defrauded or deprived plaintiff of her rights and that she failed to offer any evidence in support of those allegations and failed to establish any action in fraud.   Nonetheless, the court did not, upon defendant's motion, dismiss the complaint for lack of proof but proceeded to decide the case in favor of the plaintiff upon the record as presented on the theory that plaintiff, by force of the provisions of subdivision 3 of section 239 of the Banking Law, became the owner of one-half of the account in question as joint

tenant with Miss O'Brien as of the time the latter added her name as a joint owner, that her title thereto could not be divested by Miss O'Brien withdrawing the whole deposit on July 31, 1941, and that, though no fraud was involved or knowledge on the part of defendant of her previous relation with the account shown, she could follow the moneys so withdrawn by Miss O'Brien into the defendant's hands. No amendment of the complaint was made to present any such theory. Yet the parties here presented the case upon the facts as found by the trial court and it is upon those facts so found and affirmed by the Appellate Division that we must rest our decision. We have concluded that the historical background of the bank account in question, its origin, control, changes and use, the situation and relationship of the parties and the circumstances surrounding the alleged creation of the so-called joint account, as found by the trial court upon sufficient evidence and affirmed by the Appellate Division, necessarily, as matter of law, fail to sustain the conclusions reached by the lower courts.

Prior to March 22, 1929, Kate D. O'Brien, then being about seventy years of age, took up her residence with plaintiff, transferring to the latter $2,000 in cash for her subsequent care and maintenance. She then had a deposit account in the defendant bank of her own moneys in her sole name of $4,069.73. On or about that date, she closed that account and opened a new account in her name and in that of plaintiff and provided that "either or survivor may draw." Though the bank had signature cards of both, plaintiff never had possession of the bank book or any control over or use of the account. On October 8, 1930, Miss O'Brien withdrew the then balance in the bank and opened a new account in her sole name with a new book which she retained in her possession. On August 21, 1940, Miss O'Brien requested the bank to add the name of plaintiff to the account as it then stood on the books of the bank which was done with the words "either or survivor may draw" but no signature card for plaintiff was filed and Miss O'Brien continued to retain exclusive possession of the deposit book and exclusive control and dominion over the account. There was then on deposit $3,468.29. Significantly, no claim is made by plaintiff to any interest in the moneys by reason of the creation of the joint account in 1929 or the change in the title to and

form of the account in 1930. She thus waived any claim to any moneys in either account or, at least, is estopped to deny that each account was opened for the convenience and use of Miss O'Brien only and that neither party had any intent to create a joint ownership in either deposit account.

On July 31, 1941, Miss O'Brien withdrew the balance amounting to $3,447.22 and opened a new account in the name of herself and James E. Keenan, the son of James P. Keenan, the defendant who is her nephew. The defendant had taken her to his home to live upon the request of plaintiff that she be removed by defendant from plaintiff's home. The bank never had a signature card for James E. Keenan nor did he ever have possession of the bank book or exercise any control over that account. She withdrew $200 from that account and gave it to her grandnephew for tuition in a seminary. On August 29, 1941, the bank, at the request of Miss O'Brien, closed that account and again opened an account with the then unused balance of $3,247.22 in her name alone. To affect that change, she then wrote the bank " I would like to have this other name taken off my book as I don't want only my own on it ". She subsequently issued a check on the account to the order of the Crouse-Irving Hospital, where she was receiving care and treatment, for $188.90. On October 4, 1941, while she was still at the hospital, she issued a check for the balance of the deposit to her nephew, James P. Keenan, or to his order, and he opened an account in his name and in her name with the provision that " either or survivor may draw." Subsequently moneys were withdrawn for her care, support, maintenance, medical bills, other needs, and funeral expenses. It was found, however, that defendant never withdrew or had for his own personal use any of the moneys from any of the accounts. When Miss O'Brien died, there was a balance in the last account of $1,279.14. Nevertheless, the court has found that defendant must contribute to plaintiff out of his own funds $501.57, to make up the balance with interest of one-half of the moneys in the bank to the credit of Miss O'Brien and plaintiff on August 21, 1940, and pay the costs of the action.

Section 239, subdivision 3 (formerly § 249, subd. 3), of the Banking Law reads as follows: " When a deposit shall be made by any person in the names of such depositor and another person

and in form to be paid to either or the survivor of them, such deposit and any additions thereto made by either of such persons after the making thereof shall become the property of such persons as joint tenants, and, together with all dividends credited thereon, shall be held for the exclusive use of such persons and may be paid to either during the lifetime of both or to the survivor after the death of one of them, and such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to the savings bank for all payments made on account of such deposit prior to the receipt by the savings bank of notice in writing not to pay such deposit in accordance with the terms thereof. The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either the savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor.''

In interpreting that section, this court held in *Moskowitz* v. *Marrow* (251 N. Y. 380) as stated in *Matter of Porianda* (256 N. Y. 423), that the statute sets up two presumptions: (1) '' that a deposit made in the names of the depositor and another person ' in form to be paid to either or the survivor of them ' becomes ' the property of such persons as joint tenants ' '' and (2) that title passes to the survivor; that the first '' presumption is not conclusive and may be overcome by proof that the depositor, when making the deposit, had no intention to create a joint tenancy '', and that the second presumption, '' where applicable, is irrefutable by proof, and, therefore, a rule of substantive law * * * is limited to the moneys still on deposit in the savings bank, credited to the depositors under the original formula ' payable to either or the survivor ' '', is not applicable '' in respect of any moneys withdrawn by either during life '' and '' applies. only ' in favor of the survivor in respect of any moneys then left in the account.' '' The foregoing construction was reapproved in *Matter of Juedel* (280 N. Y. 37) where the court added that as to moneys withdrawn from the account in the lifetime of the deceased depositor '' the statute still left room for competent evidence ' that the tenancy created at the opening of the account was in truth something different from the tenancy defined by the presumption ' '', citing *Marrow* v. *Moskowitz*

(255 N. Y. 219, 222). The second presumption has no application to the account to which plaintiff's name was added on August 21, 1940, since there were no moneys left in that account at the time of the death of the deceased.

The trial court held that there was no competent evidence produced to vary the effect of the first presumption, and yet the very sequence of events surrounding the deceased's bank accounts compels the conclusion that the deceased never intended and that plaintiff never understood or believed that the change in Miss O'Brien's bank account by adding thereto the name of plaintiff on August 21, 1940, in the statutory pattern was then and there and without more to endow the plaintiff with a vested property interest in the deposited moneys as against her (*Matter of Juedel, supra*). Here the deceased, an elderly lady, at the time of the making of the change in the account was residing with her sister, the plaintiff. Plaintiff never had access to the passbook and the bank never had her signature card on this account. Additionally, during the same month that deceased left her sister's residence, the deceased had the account changed back to her own name and that of her grandnephew, with whose people she was residing. After she left her nephew's premises she again changed the account back to her own name. While she was still in the hospital and prior to her return to her nephew's premises, she drew a check for the full amount then standing in her account which was deposited by him in a joint account in her name and his. Such evidence and findings that the deceased at all times withheld from the plaintiff all dominion over the account and exercised full control and power of disposition as sole owner thereof, retaining the bankbook in her own possession, without which the plaintiff could have no enjoyment of the joint account (Banking Law, § 238, subd. 3) with the other findings of fact compels a conclusion as a matter of law that the deceased at no time regarded the tenancy between her and her sister as joint. Under these circumstances, the evidence as to complete and uncontested dominion exercised by the deceased over these accounts, in which she deposited her own funds prior to her death, destroyed the statutory presumption, which was nothing but a rebuttable implication of title which in this case conflicts with the acts of the deceased in dealing with her own property (*Moskowitz* v. *Marrow, supra; Matter of Juedel, supra*, p. 42). Clearly the tenancy created at the open-

ing of the account was in truth something different from the tenancy defined by the presumption (*Marrow* v. *Moskowitz, supra*).

Plaintiff's failure upon the trial to establish by proof the allegations of fraud as to the opening of the joint account of defendant and Miss O'Brien on October 6, 1941, gives defendant absolute title to the balance of the joint account by operation of the irrebuttable presumption created by the statute (Banking Law, § 239, subd. 3) ; *Matter of Porianda, supra; Marrow* v. *Moskowitz, supra*). The plaintiff cannot proceed to collect from defendant moneys that were in any of the accounts prior to the date of Miss O'Brien's death.

The judgments should be reversed and the complaint dismissed, with costs in all courts.

DESMOND, J. (dissenting). The suit is brought by plaintiff Margaret Walsh to establish her rights in a bank account opened on August 21, 1940, in the Onondaga County Savings Bank. On that date the Bank, pursuant to instructions from plaintiff's sister, Kate D. O'Brien, now dead, transferred $3,468.29 from another account then standing in the name of Kate D. O'Brien to a new account in the names of herself and plaintiff. The new account was set up in this form: " Miss Kate D. O'Brien or Mrs. Margaret Walsh, either or survivor may draw." The use of that particular language carried important consequences. " When a bank account is opened in the form prescribed by statute (Banking Law, § 249, subd. 3), a presumption at once arises that the interest of the depositors is that of joint tenants " (*Marrow* v. *Moskowitz*, 255 N. Y. 219, 221). As to any moneys withdrawn from such an account during the joint lives of the two named persons, there is still, after the death of either of them, the presumption that the moneys so withdrawn by one had in fact belonged to both. (*Moskowitz* v. *Marrow*, 251 N. Y. 380, 397; *Marrow* v. *Moskowitz, supra; Matter of Porianda*, 256 N. Y. 423, 426; *Matter of Juedel*, 280 N. Y. 37, 42.) " The withdrawal of moneys from the joint account does not destroy the joint tenancy, if one was created; it merely opens the door to competent evidence, if available, that no joint tenancy was originally intended or created " (*Matter of Porianda, supra*, p. 426). If the fact be, as in this case it has been found to be by both

courts below, that a joint tenancy was intended and created, then, obviously, neither owner can destroy the joint tenancy by drawing out the funds. '' It would be preposterous to claim that an appropriation of personal property by one joint owner to his personal use could divest the interests of the other joint owner '' (*O'Connor* v. *Dunnigan,* 158 App. Div. 334, 336, affd. 213 N. Y. 676, quoted in *Moskowitz* v. *Marrow, supra,* p. 394). One joint tenant cannot be '' ousted from such tenancy '' by the act of the other in drawing out moneys. (*Matter of Klenk,* 165 App. Div. 917, affd. 214 N. Y. 715.)

Such is the law as long settled by the courts. Let us apply it to the history of this joint account opened in the name of these two sisters in 1940. About a year after that opening, Kate D. O'Brien took it upon herself to draw out all the money without the knowledge or consent of plaintiff, her sister. With the money so withdrawn, Kate D. O'Brien set up, or attempted to set up, a new joint account in the name of herself and a grandnephew, James E. Keenan. Later she made various other changes and transfers. At her death in February, 1942, there was left in the bank, in the joint names of Kate D. O'Brien and her nephew James P. Keenan a balance of $1,245.14, plainly shown to be part of the $3,468.29 which had originally been in the joint account of plaintiff and Kate D. O'Brien. The nephew says that he is the survivor of himself and Kate D. O'Brien and thus, by conclusive presumption of the statute, shown to be the owner of the balance. Plaintiff says that she is entitled to the benefit of the presumption that the moneys deposited in 1940 ($3,468.29) were the property of herself and Kate D. O'Brien. She asserts, and the courts below have properly held, that Kate D. O'Brien did not, and could not, dispose of plaintiff's half interest in the account merely by taking it out of the bank and handing it back to the bank under different names. The trial court found as a fact that the July 1940 opening of that account created a true joint account. The Appellate Division affirmed that finding of fact. We cannot reverse unless the statutory presumption has been overcome conclusively, beyond doubt, and as matter of law, by evidence in this record. (See discussion in *Matter of Juedel, supra,* 280 N. Y. at p. 42.) Not only was there here no such conclusive showing against the presumption; there was no evidence of any kind whatever that

the original intention was not to create a joint estate in the fund. Defendant Keenan's request for a finding to that effect was refused. Indeed, beside the presumption of joint tenancy, there is considerable real proof that such was the purpose of the 1940 transaction. Plaintiff was Kate D. O'Brien's only sister. Plaintiff had cared for and nursed Kate D. O'Brien for years when the latter lay sick at plaintiff's home. Plaintiff's daughter testified to Kate D. O'Brien's instructions as to opening the joint account in 1940. No witness or no fact spoke the other way. On such a record we cannot possibly overturn the findings of fact below in favor of plaintiff.

While plaintiff was plainly entitled to a determination in her favor, the judgment is, however, too large and should not have run against Keenan. As aforesaid, the 1940 bank account in which plaintiff has established her joint ownership, was in the original amount of $3,468.29. The courts below awarded plaintiff half thereof, or $1,734.14, plus the bank interest thereon, totalling $1,780.71. There was, however, only $1,279.14 left in the bank at Kate D. O'Brien's death, so the judgment was that the bank pay plaintiff the $1,279.14 balance and that defendant Keenan, the nephew, pay the difference of $501.17. Keenan has appealed. The recovery against him was based on findings that before Kate D. O'Brien's death, he (defendant Keenan) drew out a total of $1,845. But there are other unreversed findings to the effect that all those withdrawals by Keenan were for the benefit of, or at the direction of, Kate D. O'Brien, and were not for any purposes of Keenan's. Those withdrawals were, therefore, the acts of Kate D. O'Brien through Keenan acting only as her agent. Keenan did not commit any actionable wrong against plaintiff and is not accountable to her. The judgment should be modified by striking out so much thereof as orders defendant Keenan to make any payment, and as so modified, should be affirmed, without costs.

LEWIS, CONWAY and THACHER, JJ., concur with RIPPEY, J., DESMOND, J., dissents in opinion in which LEHMAN, Ch. J. and LOUGHRAN, J., concur.

Judgments reversed, etc.