In the Matter of the Estate of WEARAM W. WITTER, Deceased. ROLAND AUCHAMPAUGH, as Executor of WEARAM W. WITTER, Deceased, Appellant; SUSAN B. WITTER et al., Respondents.

Third Department, March 6, 1946.

*Wallace H. Sidney* for appellant.

*Henry A. Brand* (*Milo R. Kniffen* of counsel), for respondents.

HILL, P. J. Appeal from a decree of the Schoharie County Surrogate's Court which dismissed the petition of the executor in discovery proceedings. The decedent's will was executed January 4, 1937, and he died at the age of eighty-five, December 26, 1943. The surviving widow, a little over ten years his junior, was his second wife and he her second husband. They were married in 1913, and lived together until his death. He left no children, but was survived by nieces, grandnieces and nephews. The widow had a daughter by a former marriage, Mrs. Truax, who with her son had resided for some time in decedent's household. In his will there are specific legacies to his wife of a house and lot, $10,000 and all furniture and housekeeping articles, and she is one of seven residuary legatees. He devised a farm to her daughter, and she is one of the residuaries. Specific legacies aggregating $18,000 are bequeathed to nieces, grandnieces and grandnephews, and five of this group are residuary legatees. Prior to his death he anticipated the devises in his will by conveying the house and lot to his wife, and the farm to her daughter. At the date of the execution of the will there were accounts in two savings banks amounting to nearly $9,000 in the name of decedent and his wife, each payable to the survivor, and there were savings deposits in other banks aggregating about $35,000 standing in his name. Prior to his death he transferred these accounts to himself and his wife, with the survivor to take, and prior to his death his wife withdrew all the deposits, placing some of them in joint accounts payable to herself and members of her family. The transfers of the bank accounts are assailed, the petitioner, a grandnephew named as executor of the will, asserting in his petition that they were made when " decedent Wearam Willis Witter was nearly blind and unable to read and not mentally capable of understanding the meaning and legal effect of a joint bank account with right of survivorship and through fraud and undue influence practiced upon him by Susan B. Witter, his second wife, or by some other person or persons acting in concert or privity with her * * * ". The petitioner asks that the widow be required to turn over to the executor the amount of the bank accounts which stood in the name of decedent at the time the will was made, less deductions for living and household expenses, doctors' bills and certain assets amounting to a little over $4,000 which stood in the name of decedent at the time of his death. These items of property were all that remained in his name at the time of his death.

Decedent suffered from the infirmities of old age, but except for failing eyesight he enjoyed reasonably good health. His death resulted from pneumonia after an illness of four or five days. He was in active business for many years after the marriage of the parties in 1913, a portion of the time conducting a hotel. His wife assisted him. There is no evidence of ill feeling in the family except a statement credited to him by one of the witnesses to the will, as follows: "Q. Did you overhear Mr. Witter say anything to me with reference to the drawing of the will? Mr. Kniffen: Objected to as incompetent, irrelevant and immaterial. Court: I will allow it. Mr. Kniffen: Exception. Q. What did you hear him say? A. I heard him ask you how much he had to leave her. Q. His wife? A. ' How much have I got to leave her,' that is about the only thing I remember. Mr. Kniffen: I move to strike out the answer as incompetent, irrelevant and immaterial. Court: Denied. Mr. Kniffen: Exception. Q. What else did you hear? A. This is about all I heard. Q. Did you hear him say anything about that he didn't want to give his wife any more than he had to? Mr. Kniffen: Objected to as leading. Court: Sustained. A. Yes, he did say that, but I didn't hear what you told him or anything else." This answer was stricken out. After a colloquy between counsel, and other questions, the witness quoted decedent as saying: " I don't want to leave her any more than I really got to."

There is no proof to sustain an assertion of fraud or undue influence exercised by the widow or any other person. The decedent, while weakened from age and suffering from failing eyesight, seems to have retained his mental vigor, and had the accounts remained as he deposited them for the benefit of himself and his wife, with the right of survivorship, upon his death the presumption of a joint tenancy would have been conclusive. The withdrawal by the widow of the accounts modified that, and the presumption was no longer conclusive and evidence was competent on behalf of the estate concerning the claim that the tenancy created by the opening of the accounts was in fact something different from a joint tenancy. However, a rebuttable presumption that a joint tenancy was created by decedent still remained. (*Moskowitz* v. *Marrow*, 251 N. Y. 380; *Matter of Juedel*, 280 N. Y. 37; *Walsh* v. *Keenan*, 293 N. Y. 573.) Decedent could have changed his will. The bare fact of the transfer of these accounts by him, if given the statutory effect, amounts to no more than a modification of his earlier will. The rebuttable presumption that he intended to create

joint accounts with the right of survivorship was not overcome by the petitioner.

The decree should be affirmed, with costs to all parties filing briefs, payable from the estate.

All concur.

Decree affirmed, with costs to all parties filing briefs, payable from the estate.