[Civ. No. 4830. Fourth Dist. July 16, 1954.]

C. HARRIET HARLAN, an Incompetent Person, etc., Appellant, v. ANNA K. OTT, Respondent.

C. HARRIET HARLAN, an Incompetent Person, etc., Appellant, v. ANNA K. OTT et al., Respondents.

Joseph S. Campbell for Appellant.

Jack L. Oatman and Holt & Macomber for Respondents.

MUSSELL, J.—On September 23, 1952, plaintiff filed an action, No. 176019, against Anna K. Ott alleging in count one that defendant became and is indebted to plaintiff in the sum of $15,000 for and on account of money had and received by her for the use and benefit of plaintiff, and in a second count that defendant appropriated and converted said sum to

her own use. On November 12, 1952, plaintiff filed another action, No. 177113, against Anna K. Ott and the San Diego Gas and Electric Company alleging that plaintiff was the owner of 400 shares of stock in said company, which stock was placed, as a matter of convenience, in the names of plaintiff and defendant as joint tenants; that plaintiff caused said stock to be transferred to the name of the defendant upon an understanding and agreement that defendant would hold said stock for the use and benefit of plaintiff; that defendant then and there became and is trustee of planitiff for the purpose of holding title to said stock for the use and benefit of plaintiff; that plaintiff was by reason of mental incompetence incapable of transferring said stock and defendant has refused to transfer it to plaintiff. In a second count plaintiff sought to quiet her title to the stock involved. The two actions were by stipulation consolidated for trial.

The court found in the first action that defendant was not indebted to plaintiff in the sum of $15,000 or any other sum and that it was not true that defendant had converted said sum or any other sums belonging to plaintiff to her own use. In the second action the court found that Anna K. Ott purchased said 400 shares of stock from her own funds; that she is the beneficial and record owner of said stock and that plaintiff has no right, title or interest therein; and that plaintiff was not mentally incompetent at the time said stock was transferred in the name of defendant. Judgment was entered that plaintiff take nothing in each of these actions and plaintiff appeals therefrom.

Defendant, who was 71 years of age and unmarried at the time of the trial of this action, came to America in 1899. She worked in New York for about 11 years and there saved approximately $1,000. She then went to Salt Lake City and worked in one home for eight years at a salary of $50 per month and in another for five years at a salary of $60 per month. Defendant testified that she saved all her money, put it in a Salt Lake bank and bought some stock. She met Mr. and Mrs. Harlan in Salt Lake. They were both dentists and all three were affiliated with the Christian Science Church and were close friends. In October or November, 1925, defendant went to Long Beach, California, and at about that time the Harlans moved to San Diego. Defendant testified that at the time she moved to Long Beach she had saved some $6,000 to $8,000 and that the Harlans borrowed $1,000 or

$1,500 from her before coming to San Diego and the further sum of $4,333.20 which she had in a bank in Salt Lake City. Defendant worked as a domestic in Long Beach for five years at a salary of $100 per month, during which time the Harlans borrowed small amounts of money from her. Defendant testified that she came to San Diego in the latter part of 1930 or early part of 1931 and at this time she again loaned to the Harlans all the money she had saved, which money was in a joint bank account in Long Beach under her name and that of Mrs. Harlan; that the amount loaned at this time, April 8, 1931, was the sum of $2,105.15.

The bank records of the Salt Lake bank show that defendant had a balance of $4,333.20 on deposit on December 30, 1925, and that the account was closed on that date. The Long Beach account in the Security Trust and Savings Bank was opened in 1925 and closed in 1931 by the withdrawal of $2,105.15. There is testimony in the record indicating that the money borrowed from defendant was used by the Harlans for building purposes. Mr. Harlan died in 1931 and defendant, who was then living with Mr. and Mrs. Harlan, continued to live with Mrs. Harlan until September, 1952. The two ladies were good friends for many years. Defendant worked in the house and yard and also worked at various small tasks for other persons. In 1945 Mrs. Harlan sold a building in San Diego and received approximately $20,000 for her interest therein. On January 15th of that year she wrote a check on her personal bank account, payable to Anna K. Ott, for the sum of $15,000. She delivered the check to defendant and on the same date defendant opened a new account in the First Trust and Savings Bank in San Diego by depositing this check. The signature card which was signed by defendant and Mrs. C. K. Harlan provides that the sums deposited in the account were to be owned by the parties as joint tenants and subject to the order of or withdrawal by either of the parties. The deposit slips indicate that the deposits in this account were made by defendant and the bank records show that the account was closed by defendant on October 19, 1950. The record indicates that the 400 shares of stock involved in the second action filed by plaintiff were issued to Anna K. Ott on September 28, 1950, and other stock certificates issued to Mrs. Harlan and defendant were surrendered at the time. Apparently the purchase money for these certificates came from the joint bank account in the First National Trust and Savings Bank of San Diego.

Mrs. Harlan was adjudged to be incompetent on or about March 23, 1951, and Lucille L. Lassiter was appointed guardian and brought the present actions.

Appellant's first contention is that there were no loans by defendant to plaintiff; or, if any, no intent by defendant to charge interest thereon. However, there is substantial evidence in the record to support a finding that the $15,000 paid to defendant by plaintiff was in fact a repayment of loans made by defendant to the Harlans. Defendant testified that she had loaned them between $14,500 and $15,000 and the bank records indicate that she withdrew $4,333.20 from the Salt Lake bank account on December 30, 1925, and $2,105.15 from the Long Beach bank on April 8, 1931. Defendant testified that she had no writing from the Harlans to show that they owed her money; that she "used to ask" Mrs. Harlan for a note; that they were close friends and she trusted them; that

"I wanted Mrs. Harlan—I always said to Mrs. Harlan I should have something to show for that. Well Mrs. Harlan said, 'You are secured, Anna.' She had a sister in Michigan, whose daughter is present with us now, and she trusted her, and she said, 'Now, Lottie Rumsey knows about this money that you loaned us, and if anything happened to me that I should pass away, you are secured because she knows about it and she will come out and settle with you.' And she told me that many times. That is the only security I had."

L. D. Reddard, plaintiff's nephew, testified that he had discussions with plaintiff during the last 10 years in which Mrs. Harlan stated that she was indebted to or obligated to the defendant; that during the trial he talked with Mrs. Harlan about the $15,000; that she said it was Anna's money and she had returned it to her. Mr. Reddard's daughter testified that on this occasion she heard plaintiff tell her father that the money belonged to Anna. Under the circumstances shown, the trial court's finding that defendant was not indebted to plaintiff was supported by substantial evidence.

In determining whether defendant was indebted to plaintiff, the trial court indicated that interest on the amounts withdrawn by defendant from the two banks in 1925 and 1931 should be taken into consideration and stated that if interest was allowed on the two loans of $4,333.20 and $2,105.15, the total of principal and interest would amount to the sum of $15,000. Plaintiff contends that no interest was intended

and that none should have been allowed. However, section 1914 of the Civil Code provides:

"Whenever a loan of money is made, it is presumed to be made upon interest, unless it is otherwise expressly stipulated at the time in writing." (See also *New York C. & S. House* v. *Coston,* 94 Cal.App. 94 [270 P. 695].)

Since there was no stipulation in writing in the instant case, interest was properly considered in determining that the $15,000 involved was in repayment of amounts due from plaintiff to defendant.

Appellant next contends that defendant breached a confidential relationship and has not overcome the legal presumption that she unjustly benefited at plaintiffs' expense. This argument is without merit. Plaintiff was about 10 years older than defendant and was well educated, while defendant was employed for many years as a domestic servant. The two were close friends. Defendant loaned her savings to the Harlans and trusted them to repay her. There is no evidence of fraud or coercion and the evidence introduced is insufficient to support a finding that there was a breach of the confidential relationship by the defendant.

Appellant finally contends that the joint tenancy bank account reinvested plaintiff with title to one-half of the $15,000 and the issue thereof. In this connection appellant cites the case of *Paterson* v. *Comastri,* 39 Cal.2d 66 [244 P.2d 902] as sustaining her contention. However, the court in that case in discussing section 15a of the California Bank Act (1 Deering's Gen. Laws, 1937, Act 652, pp. 221-222) said:

"This section, which was copied from the New York Bank Act, has been construed by the courts of this state and of New York to set up two presumptions: First, that a deposit in the names of the depositor and another person 'in form to be paid to' either or the survivor of them, becomes the property of such persons as joint tenants. This first presumption is not conclusive, and may be overcome by proof that the owner-depositor, when making the deposit, had no intention to create a true joint tenancy. The second presumption, that in the absence of fraud or undue influence, it was the intention of the depositors to vest title in the survivor, is conclusive. In order that the conclusive presumption may be applicable, however, there must be survivorship, and even then it applies only in favor of the survivor to monies still remaining in the account at the time of death. It does not apply in respect to monies withdrawn by either of the depositors during life,

even if one of the depositors has subsequently died. (*Wallace v. Riley*, 23 Cal.App.2d 654, 661 [74 P.2d 800]; *Moskowitz v. Marrow*, 251 N.Y. 380, 396 [167 N.E. 506, 512, 66 A.L.R. 870]; *Matter of Porianda*, 256 N.Y. 423, 425-426 [176 N.E. 826]; *Matter of Juedel*, 280 N.Y. 37, 40 [19 N.E.2d 671]; *Walsh v. Keenan*, 293 N.Y. 573, 578 [59 N.E.2d 409].)''

It was there held that the statutory presumption of equality of interest arising from the form of a joint account is rebuttable by competent evidence showing the true character and ownership of the monies deposited where one codepositor withdrew funds from the account during the lives of the codepositors and on page 72 it is said:

''Since its enactment, section 15a of the Bank Act has been deemed a part of each contract creating a joint bank account. (*Wallace v. Riley, supra*, 23 Cal.App.2d 654, 666.) The presumptions created by that section are therefore applicable regardless of the unequivocal nature of the deposit agreement; and to the extent that parol evidence of intention becomes admissible in certain types of controversies to overcome the rebuttable presumption and to show the 'realities of ownership' (*Wallace v. Riley, supra*, at p. 664), the section effects a statutory modification of the parol evidence rule with respect to bank accounts established in the statutory pattern. To hold otherwise 'would do violence to intention, for those who open such accounts have seldom any thought of restricting their enjoyment of the fund, their right to draw and spend, by the shackles of a formula . . . It would foster litigation, for each of the two depositors, the one opening the deposit as fully as the other, would be subject to an accounting for moneys afterwards withdrawn, and forced to make division on the footing of equality.' (Cardozo, Ch. J. in *Moskowitz v. Marrow*, 251 N.Y. 380, at p. 397 [167 N.E. 506, 66 A.L.R. 870]. See also *Spear v. Farwell, supra*, 5 Cal.App.2d 111 [42 P.2d 391]; *In re Kellogg, supra*, 41 Cal.App.2d 833 [107 P.2d 964].)''

In the instant case there is evidence that the defendant regarded the $15,000 involved as her own money and that it was paid to her in settlement for money loaned to the Harlans. She testified that she never invested any part of the $15,000 for Mrs. Harlan's benefit and the fact that she took title to the stock involved in her own name indicates that she did not intend to give half of the proceeds of the $15,000 check back to Mrs. Harlan.

The burden was upon plaintiff to prove by clear and convincing evidence that the stock involved was held in trust by defendant for plaintiff, where, as here, the stock was in defendant's name. (*Palmer* v. *Burnham*, 72 Cal.App.2d 626 [165 P.2d 50].) And as was said in that case, at page 628: "Whether the evidence in any particular case is of this character must be determined by the trial court, and its determination thereon will be accepted by this court as conclusive." (Citing cases.) In *Viner* v. *Untrecht*, 26 Cal.2d 261, 267 [158 P.2d 3], the court said:

" 'It is fundamental that where a judgment is attacked on the ground that it is not supported, the power of the appellate court ends when it shall once have determined that there is substantial evidence which will support the conclusions of the trial court.' (See *Stromerson* v. *Averill*, 22 Cal.2d 808 [141 P.2d 732]; *Watson* v. *Poore*, 18 Cal.2d 302 [115 P.2d 478].) And that rule is applicable where the action is one to enforce a resulting trust. Whether the evidence to prove the existence of the trust is clear, satisfactory and convincing 'is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal.' (*Stromerson* v. *Averill*, *supra*, at p. 815. See also *Beeler* v. *American Trust Co.*, 24 Cal.2d 1 [147 P.2d 583].) Likewise, in such cases the credibility and weight of the evidence are exclusively for the trial court."

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied August 9, 1954, and appellant's petition for a hearing by the Supreme Court was denied September 8, 1954.