William T. Collins, S.
The testator died on January 19, 1954, leaving a will dated July 13,1944. By its terms he disposed of his entire estate equally among his two daughters, Julia Krulish and Anna Hickis, and a son, John Ricisak. In the event any child predeceased him the share of the deceased child was to go to the issue of that child. His son did predecease him survived by a son Robert Ricisak. Mrs. Krulish was appointed executrix of his estate. She is now accounting and swears that no estate assets came into her hands as executrix.
Testator’s other daughter and his grandson filed objections to the account. They claim that the executrix failed to account for moneys approximating $16,600 which belonged to the testator and which consisted of social security payments, mortgage payments, savings bank accounts and United States savings bonds.
The moneys in the savings bank were moneys which testator had originally inherited from his predeceased wife. He had also received through his wife’s estate a mortgage on certain real property located in Jackson Heights, Queens, and a number of United States savings bonds.
At the date of his death the testator was 81 years old. Aside from writing his name he could neither read nor write English and spoke English indistinctly. He retired from employment approximately 10 years prior to his death. He lived alone for most of that time in an apartment except for about 116 days during 1952 when he was in a hospital. The accountant, Mrs. Krulish, testified that the testator kept his bankbooks in his possession and, except during the period he was confined to the hospital, whenever he wanted to deposit or withdraw moneys she went with him to the bank for that purpose. The only income he had for the last 10 years of his life were the social security payments and payments of installments and interest on the mortgage. Checks for these payments were made payable to him, were indorsed by him and were then deposited by Mrs. Krulish in accounts in her own name. She testified that whenever she made deposits in her own accounts her father was physically *720 present and he kept the bankbooks in his possession. Mrs. Krulish has failed to explain the circumstances surrounding the deposits by her of the social security moneys and the payments made on the mortgage except to state that testator had made a gift of them to her.
The testimony clearly indicates that a fiduciary relationship existed between the testator and his daughter. Because of his illiteracy and his advanced years, the testator was wholly dependent on Mrs. Krulish and relied entirely upon her to take care of his financial matters. The burden was cast upon her of coming forward with evidence to show that there had been no abuse of such relationship and that the transactions were free from fraud or undue influence. (Allen v. La Vaud, 213 N. Y. 322.) This she has not done. Any advantage therefore acquired by Mrs. Krulish as the dominant party in this fiduciary relationship requires the court to carefully scrutinize all transactions involving the moneys in the banks. The evidence that the bankbooks, which were in the name of Mrs. Krulish, were kept by the testator and that he was present on every occasion that a deposit of the social security moneys and the mortgage payments was made shows an intention on his part to retain title and possession of the moneys and is wholly inconsistent with an intention to make a valid gift. Mrs. Krulish’s claim of gift rests solely upon the bare fact that the deposits of testator’s money were made in accounts in her own name. Proof of the essential elements of a gift of these moneys is entirely lacking (Matter of Van Alstyne, 207 N. Y. 298, 308). The court holds that the social security payments amounting to $2,858.73 and the mortgage proceeds amounting to $2,545.50 are assets of the decedent and the accountant is directed to return them to the estate.
On June 10,1944 the testator opened two accounts in his own name, one (No. 131,150) in the Central Savings Bank and the other (No. 1,730,586) in the Bowery Savings Bank. Both of these accounts were closed out on March 29, 1951. At that time the balance in the Central Savings Bank was $2,195.79 and the balance in the Bowery Savings Bank was $1,797.23. On April 2, ' 1951 the proceeds of both accounts, totaling $3,993.02, were deposited in a new account (No. 21,101) in the Fourth Federal Savings and Loan Association of New York, in the names of “ John.Ricisak or Julia Krulish, as joint tenants with the rights of survivorship and not as tenants in common.” This account (No. 21,101) was closed out on April 24,1951, about three weeks later, by a withdrawal slip signed only by Mrs. Krulish. The balance then was $3,767.42. Thereafter and on the same day and in the same bank a new account (No. 22289) was opened by Mrs. *721 Krulish in her own name, in trust for Evelyn Krulish, who was her daughter, and the proceeds were redeposited in such new account.
Section 239 of the Banking Law provides that where a deposit in a savings bank is in the form of a joint account, the moneys belong to the depositors as joint tenants and the making of the deposit in such form is, in the absence of fraud or undue influence, conclusive evidence in any action or proceeding to which either such savings bank or the surviving depositor is a party of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor. The effect of this provision is that “as between the depositors themselves, the form of the deposit gives rise to a presumption and nothing more, but that after the death of either leaving a deposit then subsisting, the presumption becomes conclusive as to the title of the survivor ” (Moskowitz v. Marrow, 252 N. Y. 380, 397). If, however, upon the death of one depositor it is shown that the other had already withdrawn some or all of the moneys, the form of the account no longer raises, as to such withdrawals, a conclusive presumption in favor of the survivor and becomes “ a mere presumption in respect of any moneys previously withdrawn.” (Marrow v. Moskowitz, 255 N. Y. 219, 221.)
The mere fact that the moneys in the Central Savings Bank and in the Bowery Savings Bank were deposited in a joint account in the names of the testator and Mrs. Krulish is not one from which any inference of a transfer or a gift arises. In the absence of other evidence the transaction is simply evidence of a purpose on the part of the testator that they should be drawn out by either of them. The only presumption would be that the testator’s purpose in so setting up the account was one of convenience. Such presumption is confirmed by the fact that he was more or less helpless in managing his money affairs because of the infirmities of age and the inability to read and write the English language. This purpose is further strengthened by the fact that he had at all times kept the bankbooks in his possession, which of necessity gives rise to the questions: Did he understand that three weeks after transferring the accounts to the joint account, Mrs. Krulish withdrew all of the moneys and deposited them in a new account in her own name in trust for her daughter? If he knew, why did he retain possession of the bankbook since under the form of the account he would no longer have any interest in the fund? If he intended a gift why was it necessary in the first instance to transfer the moneys in the two banks in his name into a joint account? It is impossible to reconcile these facts with an intention to make a gift.
*722 ‘ ‘ One who asserts that another has given him a joint interest in funds is asserting a gift and takes the burden of establishing the gift by clear and convincing evidence.” (Matter of McCarthy, 164 Misc. 719, 724.) This is especially true where a trust relationship has been shown to exist. No evidence was offered by Mrs. Krulish to explain the circumstances surrounding the transactions or that her father fully comprehended them. She has failed to establish a gift by clear and convincing evidence. The court holds that the account in question amounting to $3,767.42 is an estate asset and the accountant is directed to turn over the proceeds to the estate.
On June 10,1944 the testator opened an account (No. 350,571) in his own name in the Dry Dock Savings Institution. On May 26,1952 testator executed an authorization to the bank to change the account to read: “ John Bicisak or Julia Krulish, payable to either or the survivor.” The account was closed on February 9, 1954, after the death of the testator, by the withdrawal by Mrs. Krulish of the balance of $3,158.53, which she deposited in a joint account in the same bank in the name of herself and her husband.
On June 10, 1944 the testator also opened an account (No. 130,593) in the Bank for Savings. On September 29, 1953 testator executed a duly acknowledged authorization to the Bank for Savings to transfer the balance to his account in that bank to a new account (B.194,545) in the names of “ John Ricisak or daughter Mrs. Julia Krulish or either and survivor.” The amount in the account at the time of the transfer was $1,383.36. This account was closed on February 9, 1954 after the death of the testator by the withdrawal of the funds by Mrs. Krulish.
With respect to the funds in these two accounts in the Dry Dock Savings Institution and the Bank for Sayings in the joint names of testator and Mrs. Krulish the court holds that the proceeds belong to Mrs. Krulish. Where the depositor has died with the account in the joint names still open and intact “ the statute says that the form shall be conclusive, and not merely presumptive, evidence of the intention of each that the survivor is to have the whole. ’ ’ (Moshowitz v. Marrow, 251N. Y. 380, 400, supra.) In such case as to what the true purpose or agreement was, the door to controversy is shut.
After the death of the testator’s wife two United States savings bonds for $1,000 each were issued in the joint names of the testator and Mrs. Krulish. Each matured in the lifetime of the testator and the proceeds were collected by Mrs. Krulish and deposited in the Manhattan Savings Bank in a joint account in her own name and that of her husband. With respect to these bonds also there is no evidence of an intent to make a gift *723 of them to her in his lifetime. On the contrary, as evidenced by accountant’s exhibit 2, he intended the right of survivorship to be in her only in the event of his death. Although under the form of the bonds either could collect the proceeds upon maturity pursuant to Treasury regulations, the facts indicate that the proceeds actually belonged to the testator. No proof of gift has been established by Mrs. Krulish. The same principles and findings as heretofore stated with respect to the social security moneys, mortgage payments and bank accounts must be held to apply to the United States savings bonds. The proceeds in the amount of $2,000 are held to be estate assets and the accountant is directed to return them to the estate.
As to one other United States savings bond involved in this proceeding in the amount of $750, which matured after the death of the testator, the court holds the proceeds to be the property of Mrs. Krulish.
Submit decree on notice.