■ In the Matter of the Estate of JOHN J. MURPHY, Deceased. KATHLEEN GLEESON, Appellant; JOHN J. MURPHY, JR., as Administrator of the Estate of JOHN J. MURPHY, Deceased, Respondent.— In a proceeding by the administrator of the estate of John J. Murphy, Sr., deceased, to discover property claimed to have been withheld by the decedent's daughter, Kathleen Gleeson, consisting, *inter alia,* of the proceeds of an account in the Home Savings Bank maintained by the decedent in the joint names of himself and his said daughter, the latter appeals from so much of a decree of the Surrogate's Court, Westchester County, entered March 11, 1963 upon reargument after a nonjury trial, as adhered to the court's original decision, which: (1) denied said daughter's application to dismiss the petition insofar as it related to said savings bank account: (2) determined that said deposit was made for the decedent's convenience only and without any intention on his part to make a

gift thereof to her; (3) adjudged that the petitioner, as administrator, has title to and the right of possession of the proceeds of said bank account, with interest thereon at the legal rate from April 6, 1962; and (4) ordered said daughter to deliver said proceeds to the petitioner. Decree, insofar as appealed from, reversed on the law and the facts, and motion to dismiss the petition insofar as it relates to the said savings bank account granted, with costs of the appeal to both the appellant daughter and the respondent-administrator, payable out of the estate. Findings of fact implicit or contained in the court's decision-opinion which may be inconsistent herewith are reversed, and new findings made as indicated herein. In our opinion, it was error to hold that the proceeds of the joint savings account belonged to the decedent's estate. We find: (a) that there was no direct proof to rebut the presumption that a valid joint tenancy had been intended and created; and (b) that there was no substantial circumstantial proof sufficient to support an inference that the joint account had been opened for convenience only. Hence, we may not refuse to give effect to the statutory presumption and thus, by indirection, make a post-death disposition at variance with the decedent's own valid *inter vivos* disposition. Beldock, P. J., Christ and Benjamin, JJ., concur; Hill and Rabin, JJ., dissent and vote to modify the decree insofar as appealed from, with the following memorandum by Rabin, J., in which Hill, J., concurs: Samuel Rabin, J. In this discovery proceeding, the decedent's daughter, in her answer to the petition, alleged that she had title to the proceeds of the joint bank account by virtue of her status as the surviving joint tenant. The burden of proof is, therefore, on her to establish by clear and convincing evidence her title to such proceeds (*Matter of Rabinowitz,* 5 Misc 2d 803; 3 Warren's Heaton, Surrogates' Courts [6th ed.], § 236, par. 4, p. 181). Even as to joint bank accounts, the party who asserts that another has given him a joint interest in the fund has the burden of establishing to the satisfaction of the trier of the facts all the essential elements of a gift (*Matter of Ricisak,* 2 Misc 2d 717; *Matter of McCarthy,* 164 Misc. 719; 2 Bradford Butler, New York Surrogate Law and Practice, § 1467, p. 348). Had the joint account which the decedent in 1961 established with his said daughter, payable to either or survivor, remained intact to the date of his death, the daughter would have been aided in sustaining her burden of proof by the *conclusive* presumption that title to the proceeds passed to her as survivor (*Matter of Bricker* [*Krimer*] v. *Krimer,* 13 N Y 2d 22). However, as to funds withdrawn from an account prior to the death of the depositor, the presumption that a joint account was intended is merely a *rebuttable* presumption (*Matter of Bricker* [*Krimer*] v. *Krimer, supra*). In other words, the conclusive presumption does not apply "in respect of any moneys withdrawn by either during life" (*Moskowitz* v. *Marrow,* 251 N. Y. 380, 397); it applies only "in favor of the survivor in respect of any moneys then left in the account" (*Marrow* v. *Moskowitz,* 255 N. Y. 219, 221). At bar, it was established that prior to the decedent's death, his said daughter withdrew the entire balance in the joint account and redeposited the same in a newly-opened savings account in her individual name. Although the withdrawal did not destroy the joint tenancy or the title of the survivor, it nevertheless opened the door to competent evidence that the tenancy created at the opening of the joint account was in truth something different from the tenancy defined by the statutory presumption (Banking Law, § 239, subd. 3; *Matter of Porianda,* 256 N. Y. 423). The sole remaining issue is whether the evidence adduced was sufficient to overcome the rebuttable presumption that title to the proceeds of the joint account was intended to vest in the said daughter upon the death

of her father. The effect of the presumption was to place the burden upon the petitioner (the administrator) to come forward with the evidence to rebut the presumption; and once the petitioner introduced sufficient evidence to the contrary, the presumption disappeared from the trial (Richardson, Evidence [9th ed.], § 57, p. 35). Upon a review of the entire record, we find that there was sufficient evidence introduced by the petitioner to rebut the presumption; and that thereafter the decedent's daughter failed to sustain her ultimate burden of proof. We further find that the evidence supports the determination of the learned Surrogate that the decedent did not intend to make a gift of the proceeds of the joint account to his daughter (cf. *Walsh* v. *Keenan*, 293 N. Y. 573; *Matter of Juedel*, 280 N. Y. 37; *Matter of Kelley*, 146 Misc. 353; *Matter of Darashinsky*, 145 Misc. 426). It is, therefore, our opinion that the proceeds of the joint savings account belonged to the estate of the decedent. It is our further opinion, however, under the circumstances here, that, while the decedent's daughter should be required to pay interest on the amount withdrawn, such interest should be computed at the applicable rate or rates paid by the bank for the period from April 6, 1962 — the date of such withdrawal (*Matter of Dziadzio*, 31 Misc 2d 125; *Matter of McDonnell*, 135 N. Y. S. 2d 455).