OPINION OF THE COURT
Max E. Cooper, J.
This is a CPLR article 78 proceeding wherein the petitioner seeks to reverse a decision rendered by respondent Barbara Blum affirming a decision rendered by respondent Blanche Bernstein which affirmed the New York City Department of Social Services determination to discontinue the petitioner’s authorization to receive food stamps.
The petitioner also seeks permission to prosecute this proceeding as a poor person pursuant to CPLR article 11 with a *941 waiver of filing fees and costs. This branch of of the petition is granted.
On November 14, 1978, the agency determined to discontinue the petitioner’s food stamp authorization on the ground that she had surplus assets in excess of $1,500, in violation of section 2251.2 of the New York State Department of Social Services Food Stamp Certification Manual. The petitioner challenged the determination and a fair hearing was held on December 21, 1978, before Faustino Garcia, Hearing Officer. At that time, evidence was submitted which established the existence of two, separate bank accounts, the first a joint account in the name of Mrs. Rose Abramowitz or Maurice Abramowitz, containing a balance of $200 as of December 13, 1978, on deposit with the Lincoln Savings Bank.
The second bank account, in the Williamsburg Savings Bank, was held jointly by Rose Abramowitz or Sigmund Abramowitz, and contained a balance of $2,134.21, as of December 22, 1976. This established that the petitioner was the joint owner with her son of two savings accounts in the sum of approximately $2,334. Section 2252.1 of the manual provides, in part, that: "For all one-person households, the resource limit is $1,500.00.” Upon determination that the petitioner had funds in excess of the allowable amount, her benefits were revoked by the agency.
The petitioner contends that the money was given to her by her son, Sigmund Abramowitz, who resides in Israel; that the money is still his despite his absence for a period of approximately 15 years; and that the purpose for retaining the account in New York, as a joint account is to provide available cash to the son in the event that he return to the United States. Petitioner also contends that the joint account is maintained so that she can make withdrawals and send the money to her son in Israel. Petitioner does not deny that she has retained possession of the passbooks and has made the withdrawals.
Subdivision (b) of section 675 of the Banking Law provides as follows: "The making of such deposit or the issuance of such shares in such form shall, in the absence of fraud or undue influence, be prima facie evidence, in any action or proceeding to which the banking organization, foreign banking corporation, surviving depositor or shareholder is a party, of the intention of both depositors or shareholders to create a joint tenancy and to vest title to such deposit or shares, and *942 additions and accruals thereon, in such survivor. The burden of proof in refuting such prima facie evidence is upon the party or parties challenging the title of the survivor.” (Emphasis added.) Matter of Coddington (56 AD2d 697, 698) reaffirmed the criteria which must be met to overcome this statutory presumption of joint tenancy: "The heavy burden of rebutting the presumption rests upon the challenger (Mitchiner v Bowery Sav. Bank, 31 AD2d 803) and for the appellant to prevail there must be direct proof or substantial circumstantial proof, clear and convincing and sufficient to support an inference that the joint account had been opened in that form as a matter of convenience only (Matter of Murphy, 23 AD2d 866)”. This section of the Banking Law has been the subject of extensive judicial interpretation. Among the most highly scrutinized areas have been: the source of funds, the possession of the passbook and the manner of the withdrawals.
In deciding the existence of a joint bank account in Mittman v Mittman (30 AD2d 867, affd 24 NY2d 826), the court referred to the question of the source of the funds (pp 867-868): "Moreover, it was undisputed that the source of the down payment was a joint bank account standing in the names of both plaintiff and defendant. The only conflict in the evidence was with respect to whether or not plaintiff had deposited any money of her own in the account. Assuming arguendo that she contributed nothing to the bank account, there is nothing in the record to rebut the presumption that defendant intended to vest her with a joint interest in the account, which presumption arises from the form in which the account stood (Banking Law, § 675, subd. [a]; Walsh v. Walsh, 29 A D 2d 991).”
In the present case, the fact that the funds were initially provided by the son, Sigmund, does not rebut the presumption that he intended to establish a true joint bank account.
The courts have also had occasion to consider the related question of possession of the passbook in deciding the existence of a joint account. In Matter of Golden (129 NYS2d 855, affd 285 App Div 1150, mot for rearg and lv to app den 286 App Div 854), the court upheld the existence of the joint account. Therein a joint account was opened by the son, with his money, in his name and his mother’s name. Although the son had made all deposits and withdrawals and had exclusive possession of the passbook during his lifetime, the court held *943 that the sum on deposit was the property of the mother as surviving joint tenant on the death of the son.
In the present case, the retention of the passbook is not sufficient to destroy the presumption of a valid joint account.
On the question of withdrawals, the Court of Appeals has held, in Walsh v Keenan (293 NY 573, 579, mot for rearg den 294 NY 733), that the evidence of retention of the passbook and exclusive withdrawal by one of two joint tenants was sufficient to overcome the statutory presumption.
More recently the courts have held that a withdrawal from a joint account does not destroy the joint tenancy. In Ohanian v Ohanian (25 AD2d 465) and in King v King (13 AD2d 437), • the courts held that a withdrawal of the funds on deposit was not sufficient to destroy the statutory presumption.
In Matter of Coddington (supra), the court held that the withdrawals from the joint account in excess of his moiety was insufficient to overcome the presumption! In the present case, the petitioner has not withdrawn in excess of her moiety. It is clear that she has not acted in a manner sufficient to destroy the presumption of a joint tenancy.
It is the decision of this court that the account opened by the petitioner with funds provided by her son was in the nature of a true joint account and that the evidence of possession of the passbook and the making of withdrawals was insufficient to destroy the statutory presumption of joint tenancy. The next question presented concerns the amount of money transferred by creation of the joint account.
This area of the law was fully explored in Matter of Lang (76 Misc 2d 636, 637), wherein the court recounted the applicable case law: "The Court of Appeals in dicta as recently as Matter of Bricker v. Krimer (13 N Y 2d 22, 27) cited as the law of New York the rule previously set forth in Walsh v. Keenan (293 N. Y. 573, 578); Matter of Juedel (280 N. Y. 37); Matter of Suter (258 N. Y. 104); Marrow v. Moskowitz (255 N. Y. 219), and Moskowitz v. Marrow (251 N. Y. 380) to the effect that a joint tenant withdrawing more than her moiety from a joint account during the life of the decedent, is obligated to return to the estate that amount which exceeds her moiety (Matter of Enis, 48 Misc 2d 548; see, also, Commrade v. Commrade, 29 A D 2d 871).”
In deciding the case of Lang, the court reasoned that (supra, p 638): "When Mrs. Lang created this account she gave *944 respondent no more than a presumed present interest in the account with a right to the other half depending upon survivorship. There is nothing to indicate that Mrs. Lang did not wish to keep at least her half of the account available for her use during her lifetime.”
Although the Surrogate’s Court was initially reversed in Matter of Kleinberg v Heller (45 AD2d 514), the opinion was subsequently adopted by the Court of Appeals, in Matter of Kleinberg v Heller (38 NY2d 836). This concept of the "presumed present interest” was commented upon by Judge Fuchsberg in his concurring opinion in Kleinberg, as follows (supra, pp 840-841): "from the moment of the creation of a joint account, a present unconditional property interest in an undivided one half of the moneys deposited devolves upon each tenant (Matter of Filfiley, 63 Misc 2d 824, 825, supra). ”
The final determination of this court is prescribed by CPLR 7803 (subd 3):
"The only questions that may be raised in a proceeding under this article are * * *
"3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed”.
In Matter of Moore v D’Ambrose (57 AD2d 394, 398), the court stated: " 'The power to review agency action necessarily implies the power to reverse, modify or set aside aspects of such action which violate an applicable legal rule or principle of justice.’ ”
Section 2250 of the New York State Department of Social Services Food Stamp Certification Manual provides in pertinent part: "Resources held jointly by separate households shall be considered available in toto to each household, unless it can be demonstrated that such resources are inaccessible as provided for in 2254.7.” (Emphasis added.)
In determining the eligibility of the petitioner to receive food stamps, the nonexempt resources to be considered are defined in section 2252.1 of the manual:
"Liquid Resources
"Liquid Resources which are readily negotiable such as, but not limited to, cash on hand or in a checking account, savings or credit union accounts”.
*945 A superficial application of these two sections would justify the denial of food stamps to this petitioner. However, upon careful examination of additional regulations and applicable case law, this court holds otherwise.
The regulation controlling "Inaccessible Resources”, section 2254.7 reads as follows: "The cash value of resources not accessible to the household such as, but not limited to, irrevocable trust funds, property in probate, and notes receivable (which cannot be readily liquidated), or owns an undivided interest in the whole piece or property” (emphasis supplied).
There would appear to be a conflict in the regulations in that, on the one hand, section 2252.1 declares all savings accounts to be "Liquid Resources”, but, on the other hand, "an undivided interest in the whole piece of property” is declared to be "Inaccessible Resource” under section 2254.7.
Section 2254.7 impliedly refers to nonliquid assets and may well have been intended to apply solely to those types of property interests. Nevertheless, in view of the opinion of Justice Fuchsberg in Kleinberg (supra), that a joint bank account creates a "present unconditional property interest”, it is the opinion of the court that such an account could fall into the classification of an "inaccessible resource”.
For this court to hold that the entire balance in a joint savings account constitutes a "liquid resource” available in toto to the petitioner at any time would run counter to the established law of joint bank accounts which clearly states that only the petitioner’s moiety can be considered a "liquid resource”. Any withdrawal in excess of her moiety subjects the petitioner to the possibility of a lawsuit. Therefore, while amounts in excess of her moiety may, in fact, be available to the petitioner and while it may be easy for her to withdraw these amounts, established case law would hold these amounts to be inaccessible in the legal sense.
In ruling as they have, the respondents have placed the petitioner in a legally untenable position: they have told her she cannot have food stamps because there is money available to her which the law says she can be held responsible for if her son wishes to contest any excess withdrawals on her part. It is not for this court to ponder whether the petitoner’s son would ever claim his property interest and/or become involved in litigation with his mother. The possibility of such an action exists, however remote it may seem to those with strong family ties and, if such a possibility exists, then the *946 decision of the respondents must be considered unreasonable. No individual, under any circumstances, should be required to run the risk of legal action for the purpose of purchasing food.
The decision of this court, therefore, is as follows:
The petitioner has succeeded in establishing that a true joint bank account was created. As such, her moiety now stands at $1,267, which is below the $1,500 established by the respondents as the resource limit. As to the balance remaining in the two bank accounts, while this amount might well be accessible to the petitioner in the practical sense, it should not be considered as a liquid resource since to do so would force petitioner to utilize funds which legally belong to her son in order to purchase food. The decision of the respondent, in that it requires the petitioner to take just such action, must be considered unreasonable in light of established case law dealing with the subject of joint bank accounts. Accordingly, the petition is granted to the extent that this matter is remanded to respondents for reconsideration consistent with the provisions of this decision.